E.M.C., a minor, by her parents
E.C. and M.C., and E.C. and M.C. individually,

Plaintiffs,

v.                                                                  Case No. 25-cv-570-JPS

MILWAUKEE BOARD OF SCHOOL DIRECTORS,
MILWAUKEE PUBLIC SCHOOL BOARD DISTRICT #4,
LONNIE STEELE, ZERDA PALMER,
STEPHANIE ZOLLICOFFER-PHILLIPS, and
XYZ INSURANCE COMPANY,

Defendants.

## MILWAUKEE BOARD OF SCHOOL DIRECTORS' AMENDED ANSWER TO PLAINTIFFS' COMPLAINT AND CROSSCLAIM

NOW COME the Defendants Milwaukee Board of School Directors, Milwaukee Public School Board District #4, Zerda Palmer, and Stephanie Zollicoffer-Phillips (hereinafter, the "Responding Defendants"), by their attorney, Evan Goyke, City Attorney, represented by Assistant City Attorney Clint B. Muche, Assistant City Attorney Jordan Schettle, and Assistant City Attorney Sheila Thobani, and, as and for their answer to the plaintiff's complaint, admit, deny, allege and state as follows:

<u>DEFENDANTS' FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND</u>

## I.      <u>INTRODUCTION</u>

1.      This case involves sexual assault, sexual enticement, sexual harassment, emotional abuse, manipulation, and grooming of the minor Plaintiff by her social studies teacher, Lonnie Steele, while she was a student at Andrew S. Douglas Middle School in the Milwaukee Public School System during the 2021-2022 school year.

1

**RESPONSE:** The Responding Defendants admit only that the events that give rise to this suit are alleged to have occurred between E.M.C. and Defendant Steele during the 2021-22 school year at the Andrew S. Douglas Middle School; the Responding Defendants lack knowledge or information sufficient to form a belief as to truth of the remaining allegations, and therefore deny the same and put Plaintiffs to their proof.

2.      The sexual contact was frequent, pervasive, and included criminal charges and a criminal conviction. Upon information and belief, the sexual misconduct occurred over a minimum two month period during school hours, on school property, and was known to Douglas Middle School administrators and employees, who failed to take protective action. This Complaint alleges violations of Title IX – 20 U.S.C. § 1681, and 42 U.S.C. § 1983 based on the equal protection and due process components of the Fourteenth Amendment. It also alleges causes of action under Wisconsin state law.

**RESPONSE:** The Responding Defendants admit only that Defendant Steele pleaded guilty to Child Enticement in violation of Wis. Stat. § 948.07, was convicted, and sentenced to a period of years in state prison; the Responding Defendants lack knowledge or information sufficient to form a belief as to truth of the remaining allegations, and therefore deny the same and put Plaintiffs to their proof.

3.      Upon information and belief, on several occasions during the 2021-2022 school year, the school district and its officials had credible information about improper conduct by Lonnie Steele that included actionable sexual misconduct, but did not take appropriate action to either prevent harm or prevent further harm to minor Plaintiff E.M.C. Upon information and belief, the school district and its officials created or increased the danger to E.M.C. and were deliberately indifferent to the known risk of harm, violating her constitutional and statutory rights and causing a profound impact on her life of serious and lasting harm. Plaintiffs seek to hold the Defendants responsible for the inaction and deliberate indifference which allowed the sexual misconduct to occur.

**RESPONSE:** The Responding Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in the first sentence of this paragraph, and therefore deny the same and put Plaintiffs to their proof; the Responding Defendants deny that they created or increased danger, were deliberately indifferent, violated E.M.C.'s common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

2

## II.     JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**RESPONSE:** Admit.

5.      This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

**RESPONSE:** Admit.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiffs reside in the Eastern District of Wisconsin, Andrew Douglas Middle School is located in this District and a substantial part of the acts or omissions giving rise to the claim occurred within this District.

**RESPONSE:** Admit.

## III.     PARTIES

7.      Plaintiff E.M.C. is a minor residing in Milwaukee, Wisconsin. Her claims are brought by her parents and legal guardians, E.C. and M.C.

**RESPONSE:** Based on the representation of counsel, the Responding Defendants admit.

8.      Plaintiffs E.C. and M.C also bring claims individually for emotional distress, loss of society and companionship, and medical/therapy expenses in the care and treatment of E.M.C.

**RESPONSE:** The Responding Defendants admit Plaintiffs' complaint includes such claims, but deny that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

9.      This action is brought anonymously. Plaintiff E.M.C. is a minor, and E.C. and M.C. are her parents. All Plaintiffs seek to preserve their privacy in this sensitive and highly personal matter. They wish to avoid any further harm or embarrassment as this case deals with the sexual abuse of a female middle school aged student by an adult male school employee. The minor Plaintiff is identified only by initials in the criminal case against Lonnie Steele. There is no risk of prejudice to the Defendants. Given the criminal investigation in this matter, Plaintiffs actual identities and their home address are known to the Defendants and other District staff.

**RESPONSE:** The Responding Defendants admit only that they do not object to the anonymous nature of this suit at this stage.

Case 2:25-cv-00570-JPS     Filed 08/22/25     Page 3 of 103     Document 31

10. Defendant Lonnie Steele was at all relevant times a 6th-grade teacher employed by Milwaukee Public Schools at Andrew Douglas Middle School. He is currently in the custody of Wisconsin Department of Corrections and imprisoned at John C. Burke Correctional Center located at 900 S. Madison Street, Waupun, WI 53963 for child enticement under Wis. Stat. § 948.07(1).

**RESPONSE:** Admit.

11. Defendant Milwaukee Board of School Directors is the governing entity responsible for the operation of Milwaukee Public Schools and is the policy-making body for the school system. Its principal office is 5225 W. Vliet Street, Milwaukee, WI 53208. Milwaukee Board of School Directors receives Federal financial support as a public school district. Milwaukee Board of School Directors operates 156 schools, including Andrew Douglas Middle School where E.M.C. was a student at all relevant times.

**RESPONSE:** Admit.

12. Defendant Milwaukee Public School Board District #4 is the governing district responsible for Andrew Douglas Middle School. Its principal office is 5225 W. Vliet Street, Milwaukee, WI 53208. Milwaukee Public School Board District #4 receives Federal financial support as a public school district. Milwaukee Public School Board District #4 operates 34 schools within the School Board District #4, including Andrew Douglas Middle School where E.M.C. was a student at all relevant times.

**RESPONSE:** The Responding Defendants admit the allegations in this paragraph, but deny that Milwaukee Public School Board District #4 has legal capacity to sue or be sued, or to receive federal funds, except as a subdivision of the Milwaukee Board of School Directors.

13. Defendants Milwaukee Board of School Directors and Milwaukee Public School Board District #4 will be referred herein individually or collectively as "MPS."

**RESPONSE:** The Responding Defendants acknowledge and admit only that Plaintiffs' complaint employs this naming convention.

14. Defendant Zerda Palmer was the principal of Andrew Douglas Middle School during the time of the events in question. Upon information and belief, Palmer resides at 5206 Lovers Lane Road, Milwaukee, WI 53225.

**RESPONSE:** The Responding Defendants admit the first sentence of this paragraph, but lack knowledge or information as to the second sentence; for purposes of this litigation, Defendant Palmer's address is through undersigned counsel.

4

15. Defendant Stephanie Zollicoffer-Phillips was the assistant principal during the time of the events in question. Zollicoffer-Phillips resides at 3738 N. 58th Blvd., Milwaukee, WI 53216.

**RESPONSE:** The Responding Defendants admit the first sentence of this paragraph, but lack knowledge or information as to the second sentence; for purposes of this litigation, Defendant Zollicoffer-Phillips's address is through undersigned counsel.

16. Defendant XYZ Insurance Company is unidentified whose identity will be determined through discovery.

**RESPONSE:** This paragraph contains a statement and conclusion, legal or otherwise, to which no response is required.

### IV.    FACTUAL ALLEGATIONS

17. Upon information and belief, Defendant Palmer was hired by MPS to work at Andrew Douglas Middle School. Palmer served as principal at Douglas Middle School during all times relevant to this Complaint.

**RESPONSE:** The Responding Defendants admit only that Defendant Palmer was employed by Milwaukee Public Schools as Principal of the Andrew Douglas Middle School during the 2021-22 school year, but lack knowledge or information about the remaining allegations in this paragraph.

18. In Palmer's capacity as principal, Palmer had overall responsibility and decision-making authority, along with Defendant Zollicoffer-Phillips, for Andrew Douglas Middle School.

**RESPONSE:** The Responding Defendants lack knowledge or information about what Plaintiffs mean by "overall responsibility and decision-making authority, along with Defendant Zollicoffer-Phillips," and therefore deny the same and put Plaintiffs to their proof.

19. Upon information and belief, Defendant Zollicoffer-Phillips was hired by MPS to work at Andrew Douglas Middle School. Zollicoffer-Phillips served as assistant principal at Douglas Middle School during all times relevant to this Complaint.

**RESPONSE:** The Responding Defendants admit only that Defendant Zollicoffer-Phillips was employed by Milwaukee Public Schools as Assistant Principal of the Andrew Douglas Middle

School during the 2021-22 school year, but lack knowledge or information about the remaining allegations in this paragraph.

20. In Zollicoffer-Phillips' capacity as assistant principal, Zollicoffer-Phillips had overall responsibility and decision-making authority, along with Defendant Palmer, for Andrew Douglas Middle School.

**RESPONSE:** The Responding Defendants lack knowledge or information about what Plaintiffs mean by "overall responsibility and decision-making authority, along with Defendant Palmer" and therefore deny the same and put Plaintiffs to their proof.

21. Upon information and belief, between March and May 2022, E.M.C. was subjected to repeated sexual grooming, abuse, and assault by her teacher, Defendant Steele, while enrolled in the 6th grade at Andrew Douglas Middle School.

**RESPONSE:** The Responding Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

22. Upon information and belief, Steele engaged in sexual contact with E.M.C., including:

   a. Kissing her on the lips and allowing her to kiss him;

   b. Touching her vagina underneath her clothing;

   c. Allowing her to touch his penis over his clothes on multiple occasions;

   d. Grabbing her buttocks and allowing her to sit on his lap;

**RESPONSE:** The Responding Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

23. Upon information and belief, Steele attempted to coerce and groom E.M.C. into sexual intercourse, specifically to give up her virginity before the end of the 2021-2022 school year in order to remain his "girlfriend."

**RESPONSE:**. The Responding Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

24.    Upon information and belief, these acts occurred in his classroom, often with the lights off and the door window covered.

**RESPONSE:** The Responding Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

25.    Upon information and belief, Steele allowed E.M.C. to skip other classes and spend time alone with him.

**RESPONSE:** The Responding Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

26.    Upon information and belief, a behavioral report was filed by Steele in April 2022 acknowledging inappropriate physical interaction between he and E.M.C., yet no protective or corrective action was taken. An appropriate investigation at that time would have prevented at least some of Steele's sexual abuse and grooming of E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

27.    Upon information and belief, other MPS employees and administration were aware of Steele's conduct.

**RESPONSE:** The Responding Defendants lack knowledge or information about who Plaintiffs allege was "aware of Steel's conduct," what they were allegedly aware of, or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

28.    Upon information and belief, despite warnings and clear signs of inappropriate behavior, MPS permitted Steele to remain in contact with E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information about what "warnings and clear signs" Plaintiffs are alluding to, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

29. Upon information and belief, MPS failed to supervise, discipline, or remove Steele, despite knowledge of prior misconduct and concerning behavior.

**RESPONSE:** The Responding Defendants deny the allegations in this paragraph, and any allegation, inference, or suggestion arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

30. Upon information and belief, on May 24, 2022, Milwaukee Police Department was finally called after multiple disclosures and signs of Steele's misconduct. A forensic interview confirmed detailed sexual abuse spanning multiple dates and locations inside the school, with the primary location being Steele's classroom during school hours.

**RESPONSE:** The Responding Defendants admit only that the Milwaukee Police Department conducted a criminal investigation into Defendant Steele resulting in his conviction in Milwaukee Circuit Court Case No. 22-CF-2129; the Responding Defendants lack knowledge or information sufficient to form a believe as to the remaining allegations and therefore deny the same and put Plaintiffs to their proof.

31. Upon information and belief, as a result of Defendants' actions and inactions, E.M.C. suffered severe trauma, emotional distress, and loss of educational and social opportunities.

**RESPONSE:** The Responding Defendants lack knowledge or information about what actions or inactions Plaintiffs are alleging and about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they violated Plaintiffs' statutory and/or civil rights and/or are liable to Plaintiffs.

## I.  LEGAL CLAIMS

8

**FIRST CLAIM FOR RELIEF: VIOLATION OF 42 U.S.C. § 1983 – DUE PROCESS**
**(Against Steele)**

32. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-31 of this Complaint.

33. Plaintiff E.M.C. possesses a right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

**RESPONSE:** This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required.

34. The right to bodily integrity is protected by the due process clause regardless of a victim's membership in a particular protected class.

**RESPONSE:** This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required.

35. Steele was acting with authority over Douglas students that was granted to him by MPS.

**RESPONSE:** The Responding Defendants admit only that Defendant Steele had certain authority over students in his official capacity as a teacher, but deny that conduct alleged in this complaint arose in the course and scope of his employment and/or under that authority.

36. Steele acted under color of law.

**RESPONSE:** This paragraph contains a statement and conclusion, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants deny.

37. Steele's sexual abuse constituted egregious misconduct and a violation of clearly established rights.

**RESPONSE:** This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants deny.

9

38.     Steele's conduct of sexually assaulting E.M.C. denied her due process under the law in violation of her constitutional rights under the Fourteenth Amendment to the United States Constitution.

**RESPONSE:** This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants deny.

39.     Steele's conduct of sexually assaulting E.M.C. denied her due process in a manner that shocks the conscience.

**RESPONSE:** This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants deny.

40.     Steele's actions have been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, physical pain and suffering, severe emotional trauma, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

41.     An award of punitive damages is appropriate because the acts of Defendant Steele were objectively unreasonable, and were pursued with malice, willfulness, and reckless indifference to the rights of others and particularly to the rights of Plaintiffs.

**RESPONSE:** Whether punitive damages are "appropriate" calls for a legal conclusion and requires no response; the Responding Defendants deny that they acted objectively unreasonably, or with malice, willfulness, and/or reckless indifference toward Plaintiffs' rights and lack knowledge or information sufficient to form a belief as to Defendant Steele's state of mind or conduct, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

<u>**SECOND CLAIM FOR RELIEF:**</u> **VIOLATION OF 42 U.S.C. § 1983 – EQUAL PROTECTION (Against Steele)**

42.     Plaintiffs reallege and reincorporate all previous allegations.

10

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-41 of this Complaint.

43. Plaintiff E.M.C. is entitled to equal treatment under the law pursuant to the Fourteenth Amendment to the United States Constitution.

**RESPONSE:** This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required.

44. Steele targeted E.M.C. because of her sex and did not target similarly situated male students at Douglas.

**RESPONSE:** The Responding Defendants lack knowledge or information as to whether Defendant Steele "targeted" E.M.C. and/or other students, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

45. Steele was acting with authority over Douglas students that was granted to him by MPS.

**RESPONSE:** The Responding Defendants admit only that Defendant Steele had certain authority over students in his official capacity as a teacher, but deny that conduct alleged in this complaint arose in the course and scope of his employment and/or under that authority.

46. Steele acted under color of law.

**RESPONSE:** This paragraph contains a statement and conclusion, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants deny.

47. Steele targeted and sexually assaulted E.M.C. based on her sex in violation of her right to equal protection under the Fourteenth Amendment to the United States Constitution.

**RESPONSE:** The Responding Defendants admit only that Defendant Steele was convicted of violating Wis. Stat. § 948.07(1), but lack knowledge or information about the underlying conduct supporting that conviction and therefore deny these allegations and put Plaintiffs to their proof.

48. The differential treatment of E.M.C. was intentional, arbitrary, motivated by discriminatory purposes and was not rationally related to any government interest.

11

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants lack knowledge or information about Steele's state of mind or intent and deny that they treated E.M.C. differently on the basis of sex; the Responding Defendants put Plaintiffs to their proof.

49. Steele's actions have been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, physical pain and suffering, severe emotional trauma, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

50. An award of punitive damages is appropriate because the acts of Defendant Steele were objectively unreasonable, and were pursued with malice, willfulness, and reckless indifference to the rights of others and particularly to the rights of Plaintiffs.

**RESPONSE:** Whether punitive damages are "appropriate" calls for a legal conclusion and requires no response; the Responding Defendants deny that they acted objectively unreasonably, or with malice, willfulness, and/or reckless indifference toward Plaintiffs' rights and lack knowledge or information sufficient to form a belief as to Defendant Steele's state of mind or conduct, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

**THIRD CLAIM FOR RELIEF: 42 U.S.C. § 1983 – FAILURE TO INTERVENE (Against Palmer and Zollicoffer-Phillips)**

51. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-50 of this Complaint.

52. Defendant Steele violated E.M.C.'s right to equal protection and due process under the Fourteenth Amendment when he groomed, sexually harassed, and sexually assaulted her.

12

**RESPONSE:** The Responding Defendants admit only that Defendant Steele was convicted of violating Wis. Stat. § 948.07(1), but lack knowledge or information about the underlying conduct supporting that conviction and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

53. Upon information and belief, Palmer and Zollicoffer-Phillips knew throughout the 2021-2022 school year that Steele was sexually harassing and grooming female student(s) and that Steele posed a substantial risk of sexual assault to E.M.C. and other students.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

54. Upon information and belief, Palmer and Zollicoffer-Phillips had a realistic opportunity to prevent harm to E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

55. Upon information and belief, Palmer and Zollicoffer-Phillips failed to take reasonable steps to prevent harm to E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

56. Palmer's actions were under color of law.

**RESPONSE:** The Responding Defendants admit only that Zollicoffer-Phillips official acts were made under color of law.

57. Zollicoffer-Phillips' actions were under color of law.

**RESPONSE:** The Responding Defendants admit only that Zollicoffer-Phillips official acts were made under color of law.

13

58.     Palmer and Zollicoffer-Phillips' acts and omissions have been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, physical pain and suffering, severe emotional trauma, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts and/or omissions Plaintiffs allege Palmer and Zollicoffer-Phillips did or did not do, or when, and lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

59.     An award of punitive damages is appropriate because Palmer and Zollicoffer-Phillips' acts and omissions were objectively unreasonable, and were pursued with malice, willfulness, and reckless indifference to the rights of others and particularly to the rights of Plaintiffs.

**RESPONSE:** Whether punitive damages are "appropriate" calls for a legal conclusion and requires no response; the Responding Defendants deny that they acted objectively unreasonably, or with malice, willfulness, and/or reckless indifference toward Plaintiffs' rights and deny that they violated Plaintiffs common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

60.     All of Palmer's acts and omissions were within the scope of Palmer's employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what acts or omissions Plaintiffs allege, or when, and therefore deny the allegations in the first clause of the above sentence and put Plaintiffs to their proof; as to the remainder, the Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

61.     All of Zollicoffer-Phillips' acts and omissions were within the scope of Zollicoffer-Phillips' employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what acts or omissions Plaintiffs allege, or when, and therefore deny the allegations in the first clause of the

14

above sentence and put Plaintiffs to their proof; as to the remainder, the Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Zollicoffer-Phillips, and therefore deny and put Plaintiffs to their proof.

**FOURTH CLAIM FOR REFLIEF: VIOLATION OF TITLE IX 20 U.S.C. § 1681(a)**
**(Against Milwaukee Board of School Directors and Milwaukee Public School Board**
**District #4)**

62. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-61 of this Complaint.

63. Title IX of the Education Amendments of 1972 states: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681(a).

**RESPONSE:** The Responding Defendants admit only that this paragraph contains a partial recitation of one sub-part of 20 U.S.C. § 1681(a), but deny that it is necessarily accurate unless complete and further deny any allegation, inference, or suggestion arising from this paragraph that they have violated Plaintiffs' common-law, statutory and/or civil rights and/or are liable to them.

64. Title IX's prohibitions on sex discrimination extend to "any academic, extracurricular, research, occupational training or other educational program operated by a recipient" of Federal funding. 34 C.F.R. §106.31.

**RESPONSE:** The Responding Defendants admit only that this paragraph contains a partial recitation of one sub-part of 34 C.F.R. § 106.31 but deny that it is necessarily accurate unless complete and further deny any allegation, inference, or suggestion arising from this paragraph that they have violated Plaintiffs' common-law, statutory and/or civil rights and/or are liable to Plaintiffs.

65. MPS operates educational institutions that provide programs and activities which receive Federal financial assistance and, thus, are subject to Title IX obligations.

15

**RESPONSE:** Admit.

66. Plaintiff E.M.C. was at all relevant times a female MPS student protected under Title IX.

**RESPONSE:** Admit.

67. The discrimination and harassment of E.M.C. was based on sex.

**RESPONSE:** The Responding Defendants lack knowledge or information that E.M.C. was subjected to discrimination and/or harassment based on sex, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

68. Upon information and belief, MPS, through acts and omissions of Steele, Palmer, and Zollicoffer-Phillips, treated Plaintiff E.M.C. differently than other students similarly situated who are not females.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts or omissions Plaintiffs allege were (not) taken, or when, and further lack knowledge or information that E.M.C. was treated differently than other similarly-situated students, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

69. Upon information and belief, officials at MPS had actual notice that Steele was sexually abusing a female student but did not conduct an appropriate investigation or take steps to protect female students, like E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information about what Plaintiffs allege was known, by whom, and when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they failed to conduct an "appropriate investigation" or to "take steps to protect female students" and any allegation, inference, or suggestion arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

70. Upon information and belief, MPS, through the acts and omissions of Palmer and Zollicoffer-Phillips, permitted Steele to sexually abuse, sexually harass, and groom Plaintiff E.M.C.

**RESPONSE:** Deny.

71. Upon information and belief, the discrimination and harassment of E.M.C. was so severe, offensive and pervasive that they altered the conditions of her education and deprived her of full access to educational opportunities and benefits which Title IX required MPS to provide.

**RESPONSE:** The Responding Defendants lack knowledge or information about who Plaintiffs mean by "they," as well as what conditions Plaintiffs claim were altered, or why, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

72. Upon information and belief, MPS, through Palmer, Zollicoffer-Phillips, and other employees, had knowledge of Steele's sexual abuse of a female student but were deliberately indifferent to his actions.

**RESPONSE:** The Responding Defendants lack knowledge or information about what Plaintiffs allege was known, by whom, and when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

73. Upon information and belief, MPS, through Palmer, Zollicoffer-Phillips, and other employees, failed to take prompt or adequate measures to protect Douglas students, including E.M.C., despite their knowledge of Steele's sexual abuse of a female student.

**RESPONSE:** The Responding Defendants lack knowledge or information about what Plaintiffs allege was known, by whom, and when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

74. MPS's violations of Title IX have further been a direct and proximate cause of Plaintiff E.M.C. being subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

75. MPS's violations of Title IX have been a direct and proximate cause of Plaintiff E.M.C.'s damages, including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities,

future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

### FIFTH CLAIM FOR REFLIEF: NEGLIGENCE (Against Milwaukee Board of School Directors, Milwaukee Public School District #4, Palmer and Zollicoffer-Phillips)

76. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-75 of this Complaint.

77. MPS, Palmer, and Zollicoffer-Phillips had actual notice of the claim pursuant to Wis. Stat. § 893.80(1d)(a) and would not be prejudiced by any deficiency in the notice process.

**RESPONSE:** The Responding Defendants deny having actual knowledge of any claim prior to service of process.

78. MPS, Palmer, and Zollicoffer-Phillips had a special relationship with E.M.C. based on E.M.C.'s status as a minor student enrolled in MPS's school.

**RESPONSE:** Whether a "special relationship" existed calls for a conclusion of law which requires no answer; the Responding Defendants admit only that E.M.C. was enrolled as a student in Milwaukee Public Schools during the 2021-22 school year.

79. MPS, by and through its employees including Palmer and Zollicoffer-Phillips, owed a duty to E.M.C. to use ordinary and reasonable care to ensure E.M.C.'s safety, care, health and wellbeing and to protect her from sexual harassment, including grooming and sexual assault, while she attended Douglas.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

80. MPS, by and through its employees including Palmer and Zollicoffer-Phillips, owed a duty to E.M.C. to use ordinary and reasonable care to ensure E.M.C.'s safety, care, health

18

and wellbeing by hiring, retaining, assigning, and supervising its faculty who were employed and/or acted as agents in supervisory roles, such as Steele's position as a social studies teacher.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

81. MPS, Palmer, and Zollicoffer-Phillips owed a duty to children enrolled at Douglas to train its employees regarding appropriate relationships and behavior with students.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

82. Upon information and belief, at all times material, MPS, Palmer, and Zollicoffer-Phillips knew, or in the exercise of ordinary and reasonable care, should have known, that Steele was unfit, dangerous, and a threat to the health, safety and welfare of E.M.C. and other minor females at Douglas.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

83. At all times material, MPS, Palmer and Zollicoffer-Phillips owed E.M.C. a duty to investigate Steele's misconduct and warn E.M.C. and her parents of the potential harm from Steele, provide a safe environment for E.M.C. where she would be free from sexual abuse, and protect E.M.C. from exposure to harmful individuals like Steele.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

84. Upon information and belief, MPS, Palmer and Zollicoffer-Phillips breached these duties in all or more of the following ways:

        a  Failing to exercise ordinary and reasonable care in the supervision of E.M.C. and other Douglas students.

b   Placing E.M.C. and other Douglas students in a situation where they were exposed to an unreasonable risk of harm.

c   Failing to provide a safe environment for E.M.C. where she would be free from sexual assault, sexual harassment, and grooming by Steele.

d   Failing to properly investigate Steele's interactions with E.M.C. and/or female students.

e   Failing to investigate facts regarding Steele that created a likely potential for harm to minors he supervised, including E.M.C.

f   Failing to take appropriate steps to ensure the safety of female students.

g   Failing to provide reasonable surveillance, investigation, and reporting of teachers and students to prevent and/or detect inappropriate teacher-student contact, including sexual assault.

h   Failing to provide policies and procedures to protect its students from sexual contact and abuse from predatory teachers such as Steele.

i   Failing to have and/or enforce a policy which prohibited teachers from meeting behind closed doors without additional adult supervision and/or allowing rooms to be free of any surveillance (*e.g.,* no windows or covered windows, closed and/or locked classroom doors, etc.).

j   Failing to enforce a policy prohibiting fraternization, including sexual advances and/or sexual contact, between employees of MPS and minor students.

k   Failing to exercise ordinary and reasonable care in the supervision of Steele.

l   Failing to recognize standard "grooming" patterns by a pedophile and failing to take reasonable measure to prevent such a pedophile from continuing to engage in such "grooming" at schools.

m   Failing to implement adequate security measures and protocols, including but not limited to hall monitoring, classroom checks, and/or use of resource officers for detecting and preventing teacher-student abuse.

n   Failing to make a timely report under Wis. Stat. § 48.981 based on information in their possession that they had reasonable cause to suspect that E.M.C. had been sexually groomed and/or abused by Steele or had reason to believe that E.M.C. and/or other students had been threatened with abuse by Steele.

o   Failing to warn E.C. and M.C. of the risk of harm that Steele posed to their daughter.

**RESPONSE:** The Responding Defendants deny each and every allegation in this paragraph.

20

85. The actions of MPS, Palmer, and Zollicoffer-Phillips were the cause-in-fact of Steele's wrongful acts.

**RESPONSE:** This paragraph calls for a legal conclusion to which no response is required, but if response is required the Responding Defendants deny.

86. As a further direct and proximate cause of the negligence of MPS, Palmer, and Zollicoffer-Phillips, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

87. The acts and omissions of MPS, Palmer and Zollicoffer-Phillips have been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts or omissions Plaintiffs allege were (not) taken, Plaintiffs' damages, and causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

88. All of Palmer's acts and omissions were within the scope of Palmer's employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts and/or omissions Plaintiffs' allege, or when, and therefore deny the allegations in the first clause of the above sentence and put Plaintiffs to their proof; as to the remainder, the Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

89. All of Zollicoffer-Phillips' acts and omissions were within the scope of Zollicoffer-Phillips' employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts and/or omissions, or when Plaintiffs refer to in this paragraph, and therefore deny the allegations in the first clause of the above sentence and put Plaintiffs to their proof; as to the remainder, the Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

**SIXTH CLAIM FOR RELIEF: NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION (Against Milwaukee Board of School Directors, Milwaukee Public School #4, Palmer, and Zollicoffer-Phillips)**

90. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-89 of this Complaint.

91. MPS, Palmer, and Zollicoffer-Phillips had actual notice of the claim pursuant to Wis. Stat. § 893.80(1d)(a) and would not be prejudiced by any deficiency in the notice process.

**RESPONSE:** The Responding Defendants deny having actual knowledge of any claim prior to service of process.

92. MPS, Palmer, and Zollicoffer-Phillips had a special relationship with E.M.C. based on E.M.C.'s status as a minor student enrolled in MPS's school.

**RESPONSE:** Whether a "special relationship" existed calls for a conclusion of law which requires no answer; the Responding Defendants admit only that E.M.C. was enrolled as a student in Milwaukee Public Schools during the 2021-22 school year.

93. MPS, by and through its employees including Palmer and Zollicoffer-Phillips, owed a duty to E.M.C. to use ordinary and reasonable care to ensure E.M.C.'s safety, care, health and wellbeing and to protect her from sexual harassment, including grooming and sexual assault, while she attended Douglas.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

22

94.     MPS, by and through its employees including Palmer and Zollicoffer-Phillips, owed a duty to E.M.C. to use ordinary and reasonable care to ensure E.M.C.'s safety, care, health and wellbeing by hiring, retaining, assigning, and supervising its faculty who were employed and/or acted as agents in supervisory roles, such as Steele's position as a social studies teacher.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

95.     MPS, Palmer, and Zollicoffer-Phillips owed a duty to children enrolled at Douglas to train its employees regarding appropriate relationships and behavior with students.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

96.     Under Wis. Stat. § 48.981, a Wisconsin school administrator or any other school employee is required to make a report to the appropriate county agency if that person has reasonable cause to suspect that a child has been abused or has reason to believe that a child has been threatened with abuse.

**RESPONSE:** The Responding Defendants admit only that Wisconsin law specifies circumstances under which certain classes of individuals have mandatory reporting obligations, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to make such report when required to do so.

97.     MPS, Palmer, and Zollicoffer-Phillips owed a duty to children enrolled at Douglas to train its employees to detect and report inappropriate behavior such as sexual harassment, including grooming and sexual assault, by other MPS employees who had contact with students.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

98.     MPS had a special relationship with Steele based on his employment.

**RESPONSE:** Whether a "special relationship" existed calls for a conclusion of law which requires no answer; the Responding Defendants admit only that Steele was employed by Milwaukee Public Schools during the 2021-22 school year.

99. Upon information and belief, MPS, Palmer, and Zollicoffer-Phillips knew or should have known that Steele had an inappropriate sexual interest in female students.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

100. Upon information and belief, MPS, Palmer, and Zollicoffer-Phillips knew or should have known that Steele had an inappropriate connection to E.M.C. and other female students which demonstrated both the specific threat posed to E.M.C. and general threat to young female students.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

101. Upon information and belief, it was foreseeable to MPS, Palmer, and Zollicoffer-Phillips that Steele would develop an inappropriate interest in E.M.C., and would sexually harass, including groom and sexually assault, her.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what facts and circumstances Plaintiffs contend made Steele's criminal acts foreseeable, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

102. MPS, Palmer, and Zollicoffer-Phillips had a duty to protect E.M.C. from sexual harassment, including grooming and sexual assault, by Steele.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

103. Upon information and belief, MPS's policies and procedures were inadequate to protect Douglas students, including E.M.C.

24

**RESPONSE:** The Responding Defendants lack knowledge or information about what policies and procedures Plaintiffs allege were inadequate, or in what ways, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

104. Upon information and belief, MPS, Palmer, and Zollicoffer-Phillips breached their duties to E.M.C. by:

a    Failing to reasonably screen and investigate prospective employees to determine whether they are properly trained and qualified to work with students.

b    Failing to hire competent and qualified employees and/or agents without proclivities to engage in sexual abuse against its minor students.

c    Failing to hire competent and qualified employees and/or agents with knowledge and or training needed to accurately identify sexual predators like Steele and act accordingly.

d    Failing to train its employees and/or agents to identify and report when a member of MPS staff is attempting to engage in and is engaging in unlawful sexual behaviors with its minor students.

e    Failing to properly train MPS employees and/or agents to identify and report when an inappropriate sexual relationship with another employee and/or agent and a minor student is ongoing and report it accordingly.

f    Failing to terminate or reassign those employees and/or agents who were aware of the actions of Steele against E.M.C. but did nothing to stop or report it.

g    Failing to terminate Steele immediately once MPS knew or should have known of his predatory behaviors against female minor students, including E.M.C.

h    Failing to terminate and/or provide remedial measures to ensure the safety of students once MPS knew or should have known of Steele's propensities.

i    Failing to provide a safe environment for E.M.C. where she would be free from sexual assault, sexual harassment, and grooming by Steele.

j    Failing to implement adequate security measures and protocols, including but not limited to hall monitoring, classroom checks, and/or use of resource officers for detecting and preventing teacher-student abuse.

k    Failing to make a timely report under Wis. Stat. § 48.981 based on information in their possession that they had reasonable cause to suspect that E.M.C. had been sexually groomed and/or abused by Steele or had reason to believe that E.M.C. and/or other students had been threatened with abuse by Steele.

l   Failing to have policies or training programs to prevent and/or detect sexual harassment and abuse, and to ensure compliance with all applicable legal requirements.

m   Failing to provide policies and procedures to protect its students from sexual contact and abuse from predatory teachers such as Steele.

n   Failing to have and/or enforce a policy which prohibited teachers from meeting behind closed doors without additional adult supervision and/or allowing rooms to be free of any surveillance (e.g., no windows or covered windows, closed and/or locked classroom doors, etc.).

o   Failing to enforce a policy prohibiting fraternization, including sexual advances and/or sexual contact, between employees of MPS and minor students.

p   Failing to procure and/or develop policies and procedures to prohibit sexual relationships between employees and minor students.

q   Failing to supervise Steele in a proper manner to prevent sexual abuse against its minor student, E.M.C.

r   Failing to recognize standard "grooming" patterns by a pedophile and failing to take reasonable measure to prevent such a pedophile from continuing to engage in such "grooming" at schools.

s   Failing to properly investigate Steele's interactions with E.M.C. and/or female students.

t   Failing to investigate facts regarding Steele that created a likely potential for harm to minors he supervised, including E.M.C.

u   Failing to take appropriate steps to ensure the safety of female students.

v   Failing to warn E.C. and M.C. of the risk of harm that Steele posed to their daughter.

**RESPONSE:** The Responding Defendants deny each and every allegation in this paragraph.

105.   The actions of MPS, Palmer, and Zollicoffer-Phillips were the cause-in-fact of Steele's wrongful acts.

**RESPONSE:** This paragraph calls for a legal conclusion to which no response is required, but if response is required the Responding Defendants deny.

106.   As a further direct and proximate cause of the negligence of MPS, Palmer, and Zollicoffer-Phillips, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment,

26

grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

107. The acts and omissions of MPS, Palmer and Zollicoffer-Phillips have been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts Plaintiffs contend were (not) taken, Plaintiffs' damages, and causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

108. All of Palmer's acts and omissions were within the scope of Palmer's employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts and/or omissions Plaintiffs' allege, or when, and therefore deny the allegations in the first clause of the above sentence and put Plaintiffs to their proof; as to the remainder, the Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

109. All of Zollicoffer-Phillips' acts and omissions were within the scope of Zollicoffer-Phillips' employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about what acts and/or omissions Plaintiffs' allege, or when, and therefore deny the allegations in the first clause of the above sentence and put Plaintiffs to their proof; as to the remainder, the Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

**SEVENTH CLAIM FOR RELIEF: 42 U.S.C. § 1983 – MUNICIPAL LIABILITY**
**(Against Milwaukee Board of School Directors and Milwaukee Public School Board**
**District #4)**

110.  Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-109 of this Complaint.

111.  In *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that a local government may be liable under Section 1983 for an injury caused by a "policy or custom . . . made by its lawmakers or . . . those whose edicts or acts may fairly be said to represent official policy . . ."

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required.

112.  The government may be liable under Section 1983 if their policies or customs "inflicts the injury." *Monell*, 436 U.S. at 691.

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required.

113.  "[L]ocal governments . . . can be held responsible for constitutional violations only when they themselves cause the deprivation of rights." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required.

114.  "The Supreme Court has recognized that Monell liability can arise . . . [when] a . . . 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the [municipality] itself to violate the Constitution.'" *Id*. at 378; citing *Connick v. Thompson*, 563 U.S. 51, 61-62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required.

115.  "The unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 380; *See City of Canton v. Harris*, 489 U.S. 378 (1989); *See also Connick v. Thompson*, 563 U.S. 51, 64 (2011).

28

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required.

116. Upon information and belief, MPS adopted Administrative Policy 6.36, Student Non-Fraternization Policy, in June 2011.

**RESPONSE:** The Responding Defendants admit only that Milwaukee Public Schools had, maintained, and enforced policies forbidding fraternization between staff and students during the 2021-22 school year.

117. Upon information and belief, the MPS Non-Fraternization Policy consists of five (5) subparts: (1) definitions; (2) general; (3) prohibited conduct; (4) reporting procedures; and (5) sanctions.

118. Upon information and belief, the MPS Non-Fraternization Policy states, in part,

"**(3) PROHIBITED CONDUCT**

Staff are prohibited from . . .(a) engaging in any romantic or sexual relationships with students, including . . . sexual contact, inappropriate physical displays of affection, or sexually suggestive comments . . . (b) fostering, encouraging, or participating in inappropriate emotionally or socially intimate relationships with students . . . in which the relationship could reasonably cause a student to view the staff person as more than a teacher . . ."

**RESPONSE:** The Responding Defendants admit only that this paragraph contains a partial recitation of one sub-part of the Milwaukee Public Schools' non-fraternization policy, but deny that it is necessarily accurate unless complete.

119. Upon information and belief, while MPS Non-Fraternization Policy may prohibit MPS employees from sexual contact and/or fostering intimate relationships with students, the MPS Non-Fraternization Policy fails to address the prevention and/or detection of such conduct.

**RESPONSE:** The Responding Defendants admit and affirmatively assert that Milwaukee Public Schools' express policy during the relevant time-frame prohibited employees, including Steele, from engaging in sexual contact and/or fostering intimate relationships with students, but deny any allegation, inference, or suggestion arising from this paragraph that this policy was inadequate or violated Plaintiffs' common-law, statutory and/or civil rights or that they are liable to Plaintiffs.

120.    Upon information and belief, MPS further failed to train employees, students, and parents in recognizing and responding to grooming and sexual misconduct despite said Policy.

**RESPONSE:** The Responding Defendants admit and affirmatively assert that Milwaukee Public

Schools' express policy during the relevant time-frame prohibited employees, including Steele,

from engaging in sexual contact and/or fostering intimate relationships with students, but deny

any allegation, inference, or suggestion arising from this paragraph that this policy was inadequate

or violated Plaintiffs' common-law, statutory and/or civil rights or that they are liable to Plaintiffs.

121.    Upon information and belief, MPS further failed to implement adequate security protocols, including but not limited to hall monitoring, classroom checks, and/or resource officers for detecting and preventing teacher-student abuse.

**RESPONSE:** The Responding Defendants admit and affirmatively assert that Milwaukee Public

Schools' express policy during the relevant time-frame prohibited employees, including Steele,

from engaging in sexual contact and/or fostering intimate relationships with students, but deny

any allegation, inference, or suggestion arising from this paragraph that this policy was inadequate

or violated Plaintiffs' common-law, statutory and/or civil rights or that they are liable to Plaintiffs.

122.    Upon information and belief, MPS further failed to prohibit teachers from meeting behind closed doors without additional adult supervision and/or allowing rooms to be free of any surveillance (e.g., no windows or covered windows, closed and/or locked classroom doors, etc.).

**RESPONSE:** The Responding Defendants admit and affirmatively assert that Milwaukee Public

Schools' express policy during the relevant time-frame prohibited employees, including Steele,

from engaging in sexual contact and/or fostering intimate relationships with students, but deny

any allegation, inference, or suggestion arising from this paragraph that this policy was inadequate

or violated Plaintiffs' common-law, statutory and/or civil rights or that they are liable to Plaintiffs.

123.    Upon information and belief, MPS knew or should have known of Steele's predatory behaviors.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

124. Upon information and belief, MPS knew or should have known that Steele was engaging in an inappropriate intimate relationship with E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

125. Upon information and belief, MPS knew or should have known that Steele was allowing E.M.C. to skip other class periods to spend time alone with Steele in his classroom while his door was closed, the door window was covered, and the lights of the classroom were off.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

126. Upon information and belief, despite MPS's knowledge, MPS failed to discipline Steele and took no institutional response, including but not limited to, no review of its Policy, no employee training, and/or no communication with minor students or their parents on how to report, understand, and/or detect sexual abuse.

**RESPONSE:** The Responding Defendants lack knowledge and information about what time-frame during which Plaintiffs' contend no action was taken and/or what Plaintiffs allege they knew and when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

127. All times relevant hereto, MPS acted under color of law within the meaning of 42 U.S.C. § 1983.

**RESPONSE:** The Responding Defendants admit only that their official acts were undertaken under color of law.

128. All times relevant hereto, E.M.C. had a protected liberty interest in her bodily integrity and pursuing an education.

31

**RESPONSE:** This paragraph contains a statement and conclusion, legal or otherwise, to which no response is required.

129. Upon information and belief, E.M.C. has suffered deprivations of her liberty interests by Steele's sexual grooming, sexual contact, sexual abuse, and sexual harassment of her between March 2022 and May 2022.

**RESPONSE:** The Responding Defendants admit only that Defendant Steele was convicted of violating Wis. Stat. § 948.07(1), but lack knowledge or information about Plaintiffs' characterizations about the underlying events which gave rise to those charges, and/or Plaintiffs' damages or causation, therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

130. Upon information and belief, MPS acted with deliberate indifference when it failed to take an institutional response to ensure the prevention and detection of teacher-student sexual abuse and grooming.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they acted with reckless disregard or deliberate indifference under all relevant circumstances, or ignored a known and/or obvious risk, and/or any allegation, suggestion, or inference arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

131. Upon information and belief, the risk of such constitutional violations was known and/or obvious to MPS.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they acted with reckless disregard or deliberate indifference under all relevant

Case 2:25-cv-00570-JPS Filed 08/22/25 Page 32 of 103 Document 31

circumstances, or ignored a known and/or obvious risk, and/or any allegation, suggestion, or inference arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

132. Upon information and belief, the risk was so obvious that it required action by MPS.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they acted with reckless disregard or deliberate indifference under all relevant circumstances, or ignored a known and/or obvious risk, and/or any allegation, suggestion, or inference arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

133. Upon information and belief, MPS took no action and failed to take an institutional response, including but not limited to, no review of its Policy, no employee training, and/or no communication with minor students or their parents on how to report, understand, and/or detect sexual abuse.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they acted with reckless disregard or deliberate indifference under all relevant circumstances, or ignored a known and/or obvious risk, and/or any allegation, suggestion, or inference arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

134. As a further direct and proximate cause of MPS's failures, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

33

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

135. The acts and omissions of MPS have caused Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

### EIGHTH CLAIM FOR RELIEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against Steele)

136. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-135 of this Complaint.

137. Steele's conduct was intentional and done with the purpose to cause emotional distress to E.M.C. Steele's conduct was extreme and outrageous and caused severe emotional distress to E.M.C.

**RESPONSE:** Whether Steele's conduct was "extreme and outrageous" calls for a legal conclusion and requires no response; the Responding Defendants lack knowledge or information about Steele's state of mind or intent, and about Plaintiffs' alleged damages and/or causation, and therefore deny the remaining allegations in this paragraph and put Plaintiffs to their proof.

138. Steele intended to cause emotional distress, his conduct was extreme and outrageous, it caused E.M.C.'s emotional distress, and the distress was extreme and disabling.

**RESPONSE:** The Responding Defendants lack knowledge or information about Steele's state of mind or intent, and about Plaintiffs' alleged damages and/or causation, and therefore deny the remaining allegations in this paragraph and put Plaintiffs to their proof.

34

139. Upon information and belief, E.M.C. has been unable to function normally in other relationships because of the emotional distress caused by Steele's conduct including relationships with other minor students, teachers, and has now been subject to unwanted bullying and forced to participate in Steele's criminal case and this has caused severe and permanent emotional distress.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

140. E.M.C. is a minor and lacked capacity to consent to any of Steele's inappropriate conduct.

**RESPONSE:** Admit.

141. As a further direct and proximate cause of Steele's conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

142. Steele's conduct has been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

143. Steele and/or XYZ Insurance are liable for all damages incurred by Plaintiff.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

144.    In the event Defendant Steele is found liable for damages to Plaintiff, then XYZ Insurance is obligated to pay said damages.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

<u>**NINTH CLAIM FOR RELIEF**</u>: **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Against Steele)**

145.    Steele's conduct was negligent and caused severe distress to E.M.C.

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants lack knowledge or information, and therefore deny and put Plaintiffs to their proof.

146.    Steele was negligent, his conduct caused E.M.C. emotional distress and the emotional distress is severe.

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants lack knowledge or information, and therefore deny and put Plaintiffs to their proof.

147.    Upon information and belief, E.M.C. has or will suffer fright, grief, anger, nausea, insomnia or hysteria.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

148.    No reasonable person could be expected to endure the emotional distress that E.M.C. has been forced to suffer and will continue to suffer.

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants lack knowledge or information, and therefore deny and put Plaintiffs to their proof.

149.    Upon information and belief, E.M.C. has been unable to function normally in other relationships because of the emotional distress caused by Steele's conduct including relationships

36

with other minor students, teachers, and has now been subject to unwanted bullying and forced to participate in Steele's criminal case and this has caused severe and permanent emotional distress.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs'

alleged damages and/or causation, and therefore deny the allegations in this paragraph and put

Plaintiffs to their proof.

150. E.M.C. is a minor and lacked capacity to consent to any of Steele's inappropriate conduct.

**RESPONSE:** Admit.

151. As a further direct and proximate cause of Steele's conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs'

alleged damages and/or causation, and therefore deny the allegations in this paragraph and put

Plaintiffs to their proof.

152. Steele's conduct has been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs'

alleged damages and/or causation, and therefore deny the allegations in this paragraph and put

Plaintiffs to their proof.

153. Steele and/or XYZ Insurance are liable for all damages incurred by Plaintiff.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability

of insurance coverage, if any, and therefore deny and put Plaintiffs to their proof.

154. In the event Defendant Steele is found liable for damages to Plaintiff, then XYZ Insurance is obligated to pay said damages.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, and therefore deny and put Plaintiffs to their proof.

**TENTH CLAIM FOR RELIEF: ASSAULT AND BATTERY (Against Steele)**

155. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-154 of this Complaint.

156. Upon information and belief, Steele's conduct caused bodily harm to E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

157. E.M.C. is a minor child and lacks the legal capacity to consent to the harm.

**RESPONSE:** Admit.

158. Steele intended to cause bodily harm.

**RESPONSE:** The Responding Defendants lack knowledge or information about Steele's state of mind or intention, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

159. Steele had the mental purpose to cause bodily harm to E.M.C. and/or was aware that his conduct was practically certain to cause bodily harm to E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information about Steele's state of mind or intent, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

160. That Steele's conduct was a Battery.

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants lack knowledge or information, and therefore deny and put Plaintiffs to their proof.

38

161. That Steele's conduct was an Assault.

**RESPONSE:** This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required, the Responding Defendants lack knowledge or information, and therefore deny and put Plaintiffs to their proof.

162. As a further direct and proximate cause of Steele's conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

163. Steele's conduct has been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

164. Steele and/or XYZ Insurance are liable for all damages incurred by Plaintiff.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Steele, and therefore deny and put Plaintiffs to their proof.

165. In the event Defendant Steele is found liable for damages to Plaintiff, then XYZ Insurance is obligated to pay said damages.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Steele and therefore deny and put Plaintiffs to their proof.

**ELEVENTH CLAIM FOR RELIEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against Milwaukee Board of School Directors, Milwaukee Public School Board District #4, Palmer, and Zollicoffer-Phillips)**

166. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-154 of this Complaint.

167. MPS, Palmer, and Zollicoffer-Phillips' conduct was extreme, outrageous, willful, and wanton.

**RESPONSE:** The Responding Defendants lack knowledge or information about what conduct by these defendants Plaintiffs are referring to, and when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

168. MPS, Palmer, and Zollicoffer-Phillips' conduct toward E.M.C., including but not limited to, upon information and belief, acquiescing in, failing to prevent, failing to maintain security protocols, and turning a blind eye towards sexual grooming and sexual abuse of E.M.C. was extreme, outrageous, willful, and wanton.

**RESPONSE:** The Responding Defendants deny the allegations in this paragraph, including without limitation, any allegation, inference, or suggestion that they violated Plaintiffs' common-law, statutory and/or civil rights and/or are liable to Plaintiffs.

169. MPS, Palmer, and Zollicoffer-Phillips' conduct, including but not limited to, upon information and belief, failing to investigate reports and complaints that it knew or should have known indicated sexual grooming, sexual harassment, child enticement, and/or sexual abuse of E.M.C. and other minor female students was extreme, outrageous, willful, and wanton.

**RESPONSE:** The Responding Defendants deny the allegations in this paragraph, including without limitation, any allegation, inference, or suggestion that they violated Plaintiffs' common-law, statutory and/or civil rights and/or are liable to Plaintiffs.

170. MPS, Palmer, and Zollicoffer-Phillips' intended that their extreme and outrageous conduct should inflict severe and emotional distress on E.M.C.

40

**RESPONSE:** The Responding Defendants deny the allegations in this paragraph, including without limitation, any allegation, inference, or suggestion that they violated Plaintiffs' common-law, statutory and/or civil rights and/or are liable to Plaintiffs.

171. As a further direct and proximate cause of Defendants' conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

172. MPS, Palmer, and Zollicoffer-Phillips' conduct has been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

173. All of Palmer's acts and omissions were within the scope of Palmer's employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

174. All of Zollicoffer-Phillips' acts and omissions were within the scope of Zollicoffer-Phillips' employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Zollicoffer-Phillips, and therefore deny and put Plaintiffs to their proof.

**TWELFTH CLAIM FOR RELIEF: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Against Milwaukee Board of School Directors, Milwaukee Public School Board District #4, Palmer, and Zollicoffer-Phillips)**

175. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-154 of this Complaint.

176. At all times relevant hereto, MPS, Palmer, and Zollicoffer-Phillips owed E.M.C. a duty to safeguard her from sexual grooming by their employees and/or agents, including Steele.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

177. MPS, Palmer, and Zollicoffer-Phillips breached their duty to E.M.C. when they, upon information and belief, failed to prevent Steele's sexual grooming and sexual abuse; failed to train its employees and/or agents to identify and report when a member of MPS staff is attempting to engage in and is engaging in unlawful sexual behaviors with its minor students; failed to adequately conduct background checks, reference checks, and employment screenings of employees and/or agents; and failed to maintain security protocols.

**RESPONSE:** The Responding Defendants deny the allegations in this paragraph.

178. MPS, Palmer, and Zollicoffer-Phillips acted with reckless disregard for E.M.C.'s safety and right to be free from sexual grooming and sexual abuse while a student at Douglas and failed to act with ordinary and reasonable care to prevent Steele's sexual grooming and sexual abuse.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof; the Responding Defendants further deny that they acted with reckless disregard or deliberate indifference under all relevant circumstances, or ignored a known or obvious risk, and/or any allegation, suggestion, or inference arising from this paragraph that they violated Plaintiffs' common-law, statutory, and/or civil rights and/or are liable to Plaintiffs.

42

179. Upon information and belief, at all times relevant hereto, MPS was aware, by and through its employees and/or agents including Palmer and Zollicoffer-Phillips, that Steele was engaged in sexual grooming, sexual harassment, and sexual abuse of E.M.C., but despite knowledge of such facts, failed to stop it and created additional danger to E.M.C. by retaining Steele's employment and/or not reassigning E.M.C. to another social studies teacher and/or notifying E.C. and M.C. of the harm to E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information about what Plaintiffs allege they were aware of, or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

180. MPS, Palmer, and Zollicoffer-Phillips caused E.M.C. to suffer emotional distress as a result of their negligence.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

181. As a further direct and proximate cause of Defendants' conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

182. MPS, Palmer, and Zollicoffer-Phillips' conduct has been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

183. All of Palmer's acts and omissions were within the scope of Palmer's employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

Case 2:25-cv-00570-JPS    Filed 08/22/25    Page 43 of 103    Document 31

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability

of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

184.    All of Zollicoffer-Phillips' acts and omissions were within the scope of Zollicoffer-Phillips' employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability

of insurance coverage, if any, to Zollicoffer-Phillips, and therefore deny and put Plaintiffs to their

proof.

**THIRTEENTH CLAIM FOR RELIEF: MUNICIPAL LIABILITY - INDEMNIFICATION (Against Milwaukee Board of School Directors and Milwaukee Public School Board District #4)**

185.    MPS is responsible to defend this action and satisfy any judgment entered against any individual defendants pursuant to Wis. Stat. § 895.46, regardless of whether the wrongful acts alleged herein were carried out pursuant to a custom or policy of MPS.

**RESPONSE:** The Responding Defendants admit only that Wis. Stat. § 895.46 provides for the

indemnification of municipal employees, under specified circumstances, but denies that

Plaintiffs' statement of law is necessarily accurate or complete.

**FOURTEENTH CLAIM FOR RELIEF: LOSS OF SOCIETY AND COMPANIONSHIP (By E.C. and M.C., individually)**

186.    Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as

previously stated in response to paragraphs 1-185 of this Complaint.

187.    Upon information and belief, Plaintiffs E.C. and M.C. first discovered Steele's sexual contact of E.M.C. in May 2022.

**RESPONSE:** The Responding Defendants lack knowledge or information about what E.C. and

M.C. learned or knew, or when, and therefore deny the allegations in this paragraph and put

Plaintiffs to their proof.

44

188. As a further direct and proximate result of Defendants' conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

189. Defendants' conduct has been a direct and proximate cause of E.M.C.'s damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

190. Upon information and belief, E.C. and M.C. both reside with E.M.C. and have a close relationship.

**RESPONSE:** The Responding Defendants lack knowledge or information about the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

191. Upon information and belief, E.C. and M.C. were deprived and continue to be deprived of love, affection, and care from E.M.C. due to her aforementioned injuries.

**RESPONSE:** The Responding Defendants lack knowledge or information about the allegations in this paragraph, and therefore deny the same and put Plaintiffs to their proof.

192. As a direct and proximate cause of Defendants' actions, E.C. and M.C. have suffered loss of society and companionship, including both past and future loss.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

**FIFTEENTH CLAIM FOR RELIEF: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (By E.C. and M.C., individually, against Milwaukee Board of School Directors, Milwaukee Public School Board District #4, Palmer, and Zollicoffer-Phillips)**

193. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-192 of this Complaint.

194. Upon information and belief, Plaintiffs E.C. and M.C. first discovered Steele's sexual contact of E.M.C. in May 2022.

**RESPONSE:** The Responding Defendants lack knowledge or information about what E.C. and M.C. knew, or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

195. At all times relevant hereto, MPS, Palmer, and Zollicoffer-Phillips owed E.C. and M.C. a duty to safeguard their minor daughter from sexual grooming by MPS employees and/or agents, including Steele, especially during school hours.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

196. MPS, Palmer, and Zollicoffer-Phillips breached their duty to E.C. and M.C. when they, upon information and belief, failed to prevent Steele's sexual grooming and sexual abuse; failed to train its employees and/or agents to identify and report when a member of MPS staff is attempting to engage in and is engaging in unlawful sexual behaviors with its minor students; failed to adequately conduct background checks, reference checks, and employment screenings of employees and/or agents; and failed to maintain security protocols.

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under all relevant circumstances.

197. MPS, Palmer, and Zollicoffer-Phillips acted with reckless disregard for E.C. and M.C.'s minor daughter's safety and right to be free from sexual grooming and sexual abuse while a student at Douglas and failed to act with ordinary and reasonable care to prevent Steele's sexual grooming and sexual abuse of their minor daughter.

46

Case 2:25-cv-00570-JPS    Filed 08/22/25    Page 46 of 103    Document 31

**RESPONSE:** The Responding Defendants admit only that they owed a duty of ordinary and reasonable care, but deny any allegation, inference, or suggestion arising from this paragraph that they failed to meet that standard of care under the circumstances, that they acted with reckless disregard or deliberate indifference, or ignored a known and/or obvious risk, and any allegation, inference, or suggestion arising from this paragraph that they violated Plaintiffs' common-law, statutory and/or civil rights and/or are liable to Plaintiffs.

198.    Upon information and belief, at all times relevant hereto, MPS was aware, by and through its employees and/or agents including Palmer and Zollicoffer-Phillips, that Steele was engaged in sexual grooming, sexual harassment, and sexual abuse of E.M.C., but despite knowledge of such facts, failed to stop it and created additional danger to E.M.C. by retaining Steele's employment and/or not reassigning E.M.C. to another social studies teacher and/or notifying E.C. and M.C. of the harm to E.M.C.

**RESPONSE:** The Responding Defendants lack knowledge or information as to what Plaintiffs allege they knew or when, and/or what Plaintiffs allege they should have known, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

199.    Upon information and belief, MPS, Palmer, and Zollicoffer-Phillips caused E.C. and M.C. to suffer emotional distress as a result of their negligence.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

200.    Upon information and belief, E.C. and M.C.'s emotional distress is severe.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

201.    As a further direct and proximate cause of Defendants' conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

202. MPS, Palmer, and Zollicoffer-Phillips' conduct has been a direct and proximate cause of Plaintiffs' damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

203. As a direct and proximate cause of Defendants' actions, E.C. and M.C. have suffered severe emotional distress, including both past and future distress.

**RESPONSE:** This paragraph calls for a legal conclusion to which no response is required, but if response is required the Responding Defendants deny.

204. All of Palmer's acts and omissions were within the scope of Palmer's employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Palmer, and therefore deny and put Plaintiffs to their proof.

205. All of Zollicoffer-Phillips' acts and omissions were within the scope of Zollicoffer-Phillips' employment with MPS, and MPS and/or XYZ Insurance is liable for any damages, attorney fees or costs.

**RESPONSE:** The Responding Defendants lack knowledge or information about the applicability of insurance coverage, if any, to Zollicoffer-Phillips, and therefore deny and put Plaintiffs to their proof.

**<u>SIXTEENTH CLAIM FOR RELIEF</u>: MEDICAL EXPENSES (By E.C. and M.C., individually)**

206. Plaintiffs reallege and reincorporate all previous allegations.

**RESPONSE:** The Responding Defendants reallege their admissions, denials, and assertions as previously stated in response to paragraphs 1-206 of this Complaint.

207. Upon information and belief, Plaintiffs E.C. and M.C. first discovered Steele's sexual contact of E.M.C. in May 2022.

**RESPONSE:** The Responding Defendants lack knowledge or information about what E.C. and M.C. knew, or when, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

208. As a further direct and proximate result of Defendants' conduct, E.M.C. was subjected to sexual assault, sexual battery, sexual harassment, grooming, traumatization, and/or caused to suffer mental pain and suffering, psychological injuries, past and future damages, and the loss of the capacity for the enjoyment of life.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

209. Defendants' conduct has been a direct and proximate cause of E.M.C.'s damages including but not limited to inability to learn, missed opportunities for academic instruction, delays in academic achievement, future loss of vocational opportunities, future lost income, pain and suffering, physical pain and impairment, severe emotional trauma, reduced quality of life, and expenses for therapy and/or medical.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

210. Upon information and belief, E.C. and M.C. have incurred and will continue to incur medical and/or therapy expenses in the care and treatment of E.M.C., their minor child, as a direct and proximate result of E.M.C.'s aforementioned injuries.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and/or her reasonable and necessary future medical expenses, if any, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

Case 2:25-cv-00570-JPS    Filed 08/22/25    Page 49 of 103    Document 31

211.     As a direct and proximate cause of Defendants' actions, E.C. and M.C. have incurred and will continue to incur medical and/or therapy expenses in the care and treatment of E.M.C., their minor child, including both past and future expenses.

**RESPONSE:** The Responding Defendants lack knowledge or information about Plaintiffs' alleged damages and/or causation, and/or her reasonable and necessary future medical expenses, if any, and therefore deny the allegations in this paragraph and put Plaintiffs to their proof.

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, and upon information and belief, the Responding Defendants, allege and state to the Court as follows:

1. The Answering Defendants allege each and every affirmative defense contained in the Federal Rules of Civil Procedure Rule 12 to avoid any claim of waiver in the event that discovery reveals a factual basis for these defenses, and further reserve the right to assert additional affirmative defenses that may become available as a result of future discovery in this lawsuit;

2. On information and belief, the Court may lack jurisdiction over one or more of these Responding Defendants due to lack of or insufficiency of service of process; that this matter will be the subject of further investigation and discovery and is being pleaded at this time to avoid any claim of waiver, estoppel, or of the applicability of some other, similar preclusive doctrine.

3. That Milwaukee Public School Board District #4 is a sub-division of the Milwaukee Board of School Directors and lacks independent capacity to sue or be sued;

4. That Defendant Palmer and/or Defendant Zollicoffer-Phillips may be entitled to liability protection pursuant to 20 U.S.C.A. § 7946;

50

5. That governmental units are not liable for indemnification pursuant to Wis. Stat. § 895.46 except for employee conduct that occurs in the course and scope of the employee's employment;

6. That an employee or former employees' failure to give timely notice of suit and/or cooperate with the governmental unit's defense is a bar to recovery of reasonable attorney fees and/or a bar to indemnification for judgments entered against under Wis. Stat. § 895.46;

7. That Defendant Steele's criminal conduct did not arise in the course or scope of his employment, nor under color of law;

8. That the plaintiff's action, or one or more of the causes of action stated therein, may not state a claim upon which relief may be granted; that this matter will be the subject of further investigation and discovery and is being pleaded at this time to avoid any claim of waiver, estoppel, or of the applicability of some other, similar preclusive doctrine.

9. That Plaintiffs' state-law claims are subject to the procedural prerequisites for bringing and maintaining causes of action under state law, and subject to the exclusions, immunities and limitations on liability set forth therein;

10. That the provisions of Wis. Stat. § 893.80 are fully applicable and mandatory as to all actions under state law against government units and upon information and belief, the plaintiff did not comply with the provisions of Wis. Stat. § 893.80(1d);

11. Upon information and belief, the plaintiff's state-law claims are barred or limited by the controlling statute of limitations and/or the provisions of Wis. Stat. § 893.80;

12. That Plaintiffs' damages on state-law claims are statutorily capped pursuant to Wis. Stat. § 893.80;

13. That the Milwaukee Board of School Directors and Milwaukee Public Schools' employees are entitled to discretionary immunity for their legislative, quasi-legislative, judicial and quasi-judicial acts;

14. That Defendant Palmer and Defendant Zollicoffer-Phillips acted within the scope of their authority as a public officials, and did so within their discretion and in response to the circumstances and/or exigent circumstances as they reasonably understood them to be and are therefore entitled to discretionary immunity from some or all of Plaintiffs' claims;

15. That Defendant Palmer and Defendant Zollicoffer-Phillips's actions and/or non-actions were objectively reasonable under the circumstances, and they are entitled to immunity and/or qualified immunity from liability and suit, as well as limitations on actions and damages, as provided by Wisconsin statutes, by federal regulations, and by operation of state and federal common law;

16. That Defendant Palmer and Defendant Zollicoffer-Phillips acted in good faith, without malice, and pursuant to their duties as public officials, and therefore are immune from liability pursuant to the doctrine of qualified immunity;

17. That the conduct attributable to Defendant Palmer and Defendant Zollicoffer-Phillips did not constitute any violation of a cognizable and clearly established constitutional right and therefore they are immune from liability pursuant to the doctrine of qualified immunity;

18. That Plaintiff is not entitled to punitive damages against the Responding Defendants;

19. That if the plaintiff suffered any losses and such losses were not caused by the plaintiff's own negligence, breach of contract, assumption of risk, acts or omissions, then such losses were caused by third parties or other factors, including superseding and intervening causes, and are not the responsibility of the Responding Defendants; and

20. Plaintiffs may have failed to mitigate their damages.

WHEREFORE, the defendants demand judgment as follows:

1.    Dismissing the complaint of the plaintiff on its merits and as a matter of law, together with costs and disbursements.

2.    For such other relief as the court may deem just and equitable.

## JURY DEMAND

Defendant City of Milwaukee demands a trial by jury of all issues so triable.

## MILWAUKEE BOARD OF SCHOOL DIRECTORS' CROSS-CLAIM AGAINST DEFENDANT LONNIE STEELE, E.M.C., E.C., AND M.C.

NOW COMES Milwaukee Board of School Directors (the "Board"), by their attorneys, Evan Goyke, City Attorney, represented by Assistant City Attorney Clint B. Muche, Assistant City Attorney Sheila Thobani, and Assistant City Attorney Jordan Schettle, and, pursuant to Fed. R. Civ. P. 13, state the following as the following cross-claim:

## NATURE OF THE ACTION

1. This is a declaratory judgment action brought by the Board, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, requesting that this Court declare that the Board is not statutorily required to defend or indemnify Defendant Lonnie Steele ("Steele") under Wisconsin law in any civil suit for money damages arising from or related to the underlying facts of Milwaukee County Circuit Court Case No. 2022CF2129, wherein Steele was convicted of child enticement with sexual contact in violation of Wis. Stat. § 948.07(1), because those acts did not occur in the course and scope of his employment, or on behalf of the Board or the Board's interests, but instead served Steele's own personal interests.

2. Under Wisconsin law, "[i]f the defendant in any action … is a public officer or employee and is proceeded against in an official capacity or … as an individual because of acts committed

Case 2:25-cv-00570-JPS Filed 08/22/25 Page 53 of 103 Document 31

while carrying out duties as an officer or employee **and the jury or the court finds that the defendant was acting within the scope of employment**, the judgment as to damages and costs entered against the officer or employee … shall be paid by the state or political subdivision of which the defendant is an employee." *See* Wis. Stat. § 895.46(1)(a) (emphasis added).

3. Wisconsin law further provides, "the governmental unit … shall pay reasonable attorney fees and costs of defending the action, **unless it is found by the court or jury that the defendant officer or employee did not act within the scope of employee**. *See id*. (emphasis added).

4. The Board is entitled to declaratory judgment at law because Steele's criminal acts did not occur in the course and scope of his employment, and did not arise on behalf of the Board or the Board's interests but instead served Steele's own personal interests.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over E.M.C., E.C. and M.C.'s claims against Defendant Lonnie Steele and the Board pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

7. This Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See* 28 U.S.C. § 2201(a).

8. Title 28, Section 2201(a) further provides that "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

9. Venue is proper, pursuant to 28 U.S.C. § 1391(b), because all of the relevant conduct occurred within the geographic boundaries of the United States District Court for the Eastern District of Wisconsin.

## PARTIES

10. Plaintiff Milwaukee Board of School Directors (the "Board") is the governing entity responsible for the operation of Milwaukee Public Schools and the policy-making body for the Milwaukee public school system. Its principal office is 5225 W. Vliet Street, Milwaukee, Wisconsin 53208.

11. Defendant Lonnie Steele ("Steele") was employed by Milwaukee Public Schools ("MPS") as a teacher at Andrew Douglas Middle School (the "School") at all times relevant to this civil action. Based on information and belief, Steele is currently in the custody of the Wisconsin Department of Corrections and is housed at John C. Burke Correctional Center, 900 S. Madison Street, Waupun, Wisconsin 53963.

12. Involuntary Defendant E.M.C. is a minor residing in Milwaukee, Wisconsin. E.M.C. is the plaintiff in an anonymously filed civil action in the United States District Court for the Eastern District of Wisconsin raising federal and state claims against, *inter alia*, Steele and the Board. *See* ECF No. 1.

13. Involuntary Defendants E.C. and M.C. are adult residents of the State of Wisconsin, and E.M.C.'s parents and legal guardians. *Id*.

**<u>FACTUAL ALLEGATIONS</u>**

14. Upon information and belief, Steele engaged in criminal misconduct of a prurient nature with E.M.C. between March and May 2022 while employed as a teacher at the School. *Id*.

15. Upon information and belief, some or all of these activities occurred during school hours at the School. *Id*.

16. Upon information and belief, Steele took steps to prevent these activities from coming to the attention of law enforcement, MPS staff, and the Board. *Id*.

55

Case 2:25-cv-00570-JPS    Filed 08/22/25    Page 55 of 103    Document 31

17. On May 24, 2022, school staff reported certain statements made by E.M.C. to the Milwaukee Police Department resulting in an criminal investigation into Steele. *Id.*

18. Upon information and belief, subsequent investigation confirmed that Steele had engaged in sexual misconduct with E.M.C. at the School. *Id.*

19. On May 31, 2022, Steele made his initial appearance in Milwaukee County Circuit Court in the case of *State of Wisconsin v. Lonnie Steele*, Case No. 2022CF2129, and was charged with one count of 1st Degree Child Sexual Assault in violation of Wis. Stat. § 948.02(1)(e). *See* https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CF002129&countyNo=40&index=0&mode=details (Last accessed July 25, 2025).

20. On August 14, 2023, Steele entered a guilty plea to the amended charge of Child Enticement with Sexual Contact in violation of Wis. Stat. § 948.07(1). He was sentenced to six (6) years in state prison, with six (6) years of extended supervision to follow, on September 14, 2023. *Id.*

21. The Milwaukee County Circuit Court docketed *Notice of Intent to Pursue Post-Conviction Relief* in the case of *State of Wisconsin v. Lonnie Steele*, Case No. 2022CF2129 on September 18, 2023. *Id.*

22. The Wisconsin Court of Appeals, District 1, electronic docket reflects a pending appeal, Appeal No. 2024CR0698.

23. On April 19, 2025, E.C. and M.C. initiated the civil action *E.M.C., et al. v. Milwaukee Board of School Directors, et al.* in United States District Court for the Eastern District of Wisconsin, Case No. 25-cv-0570-JPS ("E.D. Wis., Case No. 25-cv-0570-JPS"), on behalf of the minor, E.M.C., and individually, seeking money damages for alleged violations of federal and state law against, *inter alia*, Steele based on the same set of operative facts for which he was

Case 2:25-cv-00570-JPS    Filed 08/22/25    Page 56 of 103    Document 31

convicted of a felony sex offense in *State of Wisconsin v. Lonnie Steele*, Case No. 2022CF2129. *See* ECF No. 1.

24. Steele was served with a summons and complaint in E.D. Wis., Case No. 25-cv-0570-JPS, on June 9, 2025. *See* ECF No. 12.

25. The Board was served with a summons and complaint in E.D. Wis., Case No. 25-cv-0570-JPS, on June 6, 2025. *See* ECF No. 12.

26. Pursuant to Fed. R. Civ. P. 12, the defendant's answer and/or pleading in response to plaintiff's complaint is due within 21 days of service unless the plaintiff serves the defendant with a waiver of service and the defendant timely executes and returns the waiver.

27. The Plaintiffs did not serve a waiver of service upon Steele or the Board, and neither Steele, nor the Board executed a waiver of service in E.D. Wis., Case No. 25-cv-0570-JPS.

28. The Board's answer and/or responsive pleading in E.D. Wis., Case No. 25-cv-0570-JPS was due on or before June 27, 2025.

29. Steele's answer and/or responsive pleading in E.D. Wis., Case No. 25-cv-0570-JPS was due on or before June 30, 2025.

30. On June 27, 2025, the Board mailed a copy of the plaintiff's complaint in E.D. Wis., Case No. 25-cv-0570-JPS enclosed with a cover-letter notifying Steele that the Board was declining to represent him and alerting him to the upcoming responsive deadline.

31. On July 11, 2025, plaintiff's counsel caused Steele to be served with notice of intent to pursue default. *See* ECF Nos. 20 and 20-1.

32. Steele has not acknowledged or responded to the Board's correspondence in any way.

## <u>LEGAL CLAIMS</u>

<u>FIRST CLAIM FOR RELIEF: Against All Defendants</u>
*Declaratory Judgment Pursuant to Wis. Stat. §§ 895.46 and 806.04*

33. Paragraphs 1-32 are realleged and incorporated herein by reference.

34. Government officials and/or employees are only entitled to indemnification under state law for acts committed within the scope of employment. *See* Wis. Stat. § 895.46(1)(a).

35. Similarly, the duty to defend and/or to pay reasonable attorney fees and costs only applies when the government official and/or employee acted within the scope of employment. *See id*.

36. In addition, "[f]ailure by the officer or employee to give notice … as soon as reasonably possible is a bar to [the] recovery … of reasonable attorney fees and costs of defending the action" and if the defendant-employee refuses to cooperate in the defense he or she "is not eligible for any indemnification or for the provision of legal counsel by the governmental unit under this section." *See* Wis. Stat. § 895.46(1)(a).

37. The Wisconsin Supreme Court has directed that in scope-of-employment cases under Wis. Stat. § 895.46(1)(a), "consideration must be given to whether the employee was actuated, at least in part, by a purpose to serve his or her employer." *Olson v. Connerly*, 156 Wis.2d 488, 457 N.W.2d 479 (1990).

38. In *Martin v. Milwaukee County*, 904 F.3d 544, 552-53, 555, (7th Cir. 2018), the Court synthesized the scope-of-employment standard under Wis. Stat. § 895.46 thusly:

> An act is not in the scope unless it is a natural, not disconnected and not extraordinary, part or incident of the services contemplated. An act is not in the scope if it is different in kind from that authorized, far beyond the authorized time or space, or too little actuated by a purpose to serve the employer. But an act is in the scope if it is so closely connected with the employment objectives, and so fairly and reasonably incidental to them, that it may be regarded as a method, even if improper, of carrying out the employment objectives. We must consider the employee's intent and purpose, in light of subjective and objective circumstances.

39. Put another way, "[c]onduct is not in the scope [of employment] if it is different in kind from that authorized, far beyond the authorized time or space, or too little actuated by a purpose to serve the employer." *Martin*, 904 F.3d at 553.

40. The *Martin* Court further observed that "[i]ntent is not just one of several factors to be put in a balancing test[;]" rather "an employee's [conduct] being at least partially actuated by a purpose to serve the employer is a *sine qua non* of scope [of employment]." *See id*. at 556 (citing *Olson*, 457 N.W.2d at 483).

41. *Martin v. Milwaukee County* concerned federal claims under 42 U.S.C. § 1983 against a former-correctional officer who sexually assaulted an inmate at a county correctional facility on multiple occasions, while he was on-duty, and an indemnification claim against the county that ran and staffed the institution. *See* 904 F.3d at 548-550.

42. The *Martin* Court took it as given that the sexual assaults took place within the authorized time and space limits of the former-correctional officer's employment, but nonetheless concluded that no reasonable jury could conclude that sexual assaults were a natural part or incident of the services contemplated by his employment; nor that sexual assaults were of the same or similar kind of conduct as he was employed to perform; nor that the sexual assaults were actuated by a purpose to serve the County, or were closely connected with or incident to the employee's employment objectives; and that no reasonable jury could conclude that the sexual assaults were "improper methods of carrying out" the employee's employment objectives. *See Martin*, 904 F.3d at 552-555.

43. Thus, the Seventh Circuit concluded that the county was entitled to judgment as a matter of law on the indemnification claim, and reversed and vacated the result in the trial court with instructions to enter judgment in favor of the County. *Id.* at 557.

44. In *McGlenn v. Madison Metro. Sch. Dist.*, 738 F. Supp. 3d 1071, 1078-79, 1087-1091 (W.D. Wis. 2024), the Western District of Wisconsin considered scope-of-employment in an educational setting and determined that the defendant school district was not liable to indemnify

its former teacher for sexual misconduct he committed while chaperoning school trips pursuant to Wis. Stat. § 895.46, even though the teacher's "misconduct was carried out while on the job[,]" because the teacher's "conduct was not motivated by a misguided interest to serve his employer, and it did not serve his employer in any way."

45. At all times material to E.D. Wis., Case No. 25-cv-0570-JPS, Steele was motivated by purely personal reasons. *See* Exhibit 1 ("Preliminary Hearing Transcript") and Exhibit 2 ("Sentencing Hearing Transcript") attached hereto.

46. At all times material to E.D. Wis., Case No. 25-cv-0570-JPS, Steele's misconduct was not actuated by a purpose to serve the Milwaukee Board of School Directors (or MPS, or the School), or part or incident to the services contemplated within his employment.

47. At all times material to E.D. Wis., Case No. 25-cv-0570-JPS, Steele's misconduct did not serve Milwaukee Board of School Directors (or MPS, or the School) in any way.

48. Steele is barred as a matter of law from indemnification for any judgment as to damages and costs in E.D. Wis., Case No. 25-cv-0570-JPS because his criminal misconduct did not occur within the scope of his employment.

49. Steele failed to timely notify the Board that he was named as a defendant in E.D. Wis., Case No. 25-cv-0570-JPS.

50. Notice of suit to the political subdivision, by the named (former) employee-defendant, triggers the political subdivision's duty to defend and indemnify as a matter of public policy.

51. Steele has never notified the Board of suit, or requested representation in conjunction with E.D. Wis., Case No. 25-cv-0570-JPS.

52. The Board does not have a duty under Wis. Stat. § 895.46 to defend Steele in E.D. Wis., Case No. 25-cv-0570-JPS.

53. Steele is barred as a matter of law from recovering reasonable attorney fees and costs of defending in E.D. Wis., Case No. 25-cv-0570-JPS by his failure to timely notify the Board.

54. Steele has never responded to the Board's letter notifying him it had determined that his conduct did not occur within the scope of his employment.

55. Steele is barred as a matter of law from indemnification for any judgment as to damages and costs in E.D. Wis., Case No. 25-cv-0570-JPS by his failure to provide timely notify, request representation, or cooperate with the Board's defense.

**PRAYER FOR RELIEF**

WHEREFORE, the Milwaukee Board of School Directors requests that this Court enter a judgment finding and declaring that:

1. Defendant Lonnie Steele did not act within the scope of his employment when he committed the acts or omissions which comprise the factual basis for the plaintiffs' claims in U.S. District Court, Eastern District of Wisconsin, Case No. 25-cv-0570-JPS;

2. Consistent with Wis. Stat. § 895.46, Defendant Lonnie Steele is not eligible for indemnification as to any judgment as to damages and costs entered against him in U.S. District Court, Eastern District of Wisconsin, Case No. 25-cv-0570-JPS because those alleged acts did not occur within the scope of his employment;

3. Consistent with Wis. Stat. § 895.46, Defendant Lonnie Steele is not eligible for the provision of legal counsel in conjunction with U.S. District Court, Eastern District of Wisconsin, Case No. 25-cv-0570-JPS due to lack of notice and/or cooperation in the defense;

4. Consistent with Wis. Stat. § 895.46, Defendant Lonnie Steele is not eligible for the payment of reasonable attorney's fees or costs of the defending U.S. District Court, Eastern

Case 2:25-cv-00570-JPS    Filed 08/22/25    Page 61 of 103    Document 23-1

District of Wisconsin, Case No. 25-cv-0570-JPS because the acts alleged therein did not occur within the scope of his employment;

5. Consistent with Wis. Stat. § 895.46, Defendant Lonnie Steele is not eligible for the payment of reasonable attorney's fees or costs of the defending U.S. District Court, Eastern District of Wisconsin, Case No. 25-cv-0570-JPS due to lack of timely notice;

6. Such other relief as required by the interest of justice.

Dated and signed at Milwaukee, Wisconsin this 18th day of August, 2025.

EVAN GOYKE
City Attorney

/s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
State Bar No. 1131629
Email: cmuche@milwaukee.gov
SHEILA THOBANI
Assistant City Attorney
State Bar No. 110817
Email: sthoba@milwaukee.gov
JORDAN SCHETTLE
Assistant City Attorney
State Bar No. 1104571
Email: jschet@milwaukee.gov

*Attorneys for Defendants Milwaukee Board of School Directors, Milwaukee Public School Board District #4, Zerda Palmer, and Stephanie Zollicoffer-Phillips*

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550

1034-2025-1120

FILED
05-28-2024
Anna Maria Hodges
Clerk of Circuit Court
2022CF002129

STATE OF WISCONSIN  :  CIRCUIT COURT  :

MILWAUKEE COUNTY
BRANCH PE

---------------------------------------------------------------

STATE OF WISCONSIN,                    TRANSCRIPT OF:
                                       PRELIMINARY HEARING
    Plaintiff,

v.                                     Case No. 22CF-2129

LONNIE STEELE,

    Defendant.
---------------------------------------------------------------
CHARGE:  Second Degree Child Sexual Assault, Sexual
Contact With Person Under Age of 13
---------------------------------------------------------------
                              JUNE 30, 2022

                              MILWAUKEE, WISCONSIN
                              CRIMINAL JUSTICE FACILITY
                              --ROOM 146




BEFORE:

    THE HONORABLE BARRY PHILLIPS,

                                       JUDICIAL COURT
                                       COMMISSIONER.




APPEARANCES:

    DISTRICT ATTORNEY'S OFFICE, by KARINE O'BYRNE,
Assistant District Attorney, appeared on behalf of the
State of Wisconsin.

    LORI KUEHN, Attorney at Law, appeared on behalf
of the Defendant, who appeared via Zoom.




                    KATHERINE M. NELSON
                 OFFICIAL COURT REPORTER

Case 2225cv00570JPS    Filed 08-22-25    Page 63 of 103    Document 31

INDEX

                                                              PAGE

DETECTIVE ZACHARY THOMS............................... 4


DIRECT EXAMINATION BY MS O'BYRNE..................... 4


CROSS EXAMINATION BY MS KUEHN........................ 9


MOTION............................................... 11


ARRAIGNMENT.......................................... 12


SCHEDULING........................................... 12

* * * * * * *

EXHIBITS:

None.

Case 2:25-cv-00570-JPS     Filed 08/22/25     Page 64 of 103     Document 31

(9:50 a.m.)

CLERK:  State of Wisconsin versus Lonnie Steele, 22CF-2129.  Second degree child sexual assault, sexual contact with person under age of 13.

The case is assigned to Judge Borowski, Branch 12.  Appearances.

MS O'BYRNE:  The State by Assistant D.A. Karine O'Byrne.

CLERK:  Start that video, Lori, would you please?

MS KUEHN:  Attorney Lori Kuehn appears on behalf of Mr. Lonnie Steele, Mr. Steele and I are both present in the courtroom.  Good morning.

THE COURT:  Good morning.

MS O'BYRNE:  The State calls Detective Thoms.

CLERK:  Right hand, Detective.

(Witness first duly sworn on oath.)

THE WITNESS:  I do.

CLERK:  Please state and spell your name for the record.

THE WITNESS:  My name is Zachary, spelled Z. A. C. H. A. R. Y., Thoms is T. H. O. M. S.

THE COURT:  Could you adjust your screen,

Case 2:25-cv-00570-JPS     Filed 08-22-25     Page 65 of 103     Document 31

Counsel?

MS O'BYRNE:  I am sorry, Detective Thoms, I can't hear you.

THE WITNESS:  I can't hear you at all.

MS O'BYRNE:  Very faintly.  Can you get closer to the microphone?

THE WITNESS:  Let me see if I can adjust it.  I am going back to a co-worker, he is about 20 yards away, I am going to sit at his computer. He is waiting on the same prelim court.  Just one second.

MS O'BYRNE:  Is that all right, Commissioner?

THE COURT:  I mean, yeah, we heard him fine once I turned the volume up.

THE WITNESS:  This is Detective Thoms, not K. Miller.

DIRECT EXAMINATION

BY MS O'BYRNE:

Q    Detective Thoms, have you been sworn in?

A    Yes.

Q    How are you employed?

A    Through the City of Milwaukee as a Detective.

Q    How long have you been a Milwaukee Police Detective?

A    About three months.

Case 2:25-cv-00570-JPS    Filed 08-22-25    Page 66 of 103    Document 23-1

Q    Then before that, how long a Police Officer?

A    Since December 7th of 2007.

Q    Were you on duty, Detective Thoms, did you have occasion to interview an individual who was identified to you as Lonnie Steele?  I am sorry.

A    Yes, I interviewed him.  I did a mirandized interview of Lonnie Steele.

Q    Do you recall when you did that?

A    It was mid-May.

Q    May of 2022?

A    Yes.

Q    Do you see Mr. Lonnie Steele in court here today on the Zoom screen?

THE COURT:  State, what is the problem?

MS O'BYRNE:  You have all the people in the Zoom room remove his mask, please?

THE COURT:  He did pull it down.

THE WITNESS:  Okay.

BY MS O'BYRNE:

Q    Detective, can you identify Mr. Steele here today?

A    Yes.  Mr. Steele appears to be in prelim court. He is African-American male wearing a black shirt.

MS O'BYRNE:  May the record reflect the identification of the defendant?

THE COURT:  Any objection?

Case 2:25-cv-00570-JPS     Filed 08-22-25     Page 67 of 103     Document 23-1

MS KUEHN:  No objection as to identification for purposes of the prelim.

THE COURT:  Record shall reflect the in-court identification of the defendant.

BY MS O'BYRNE:

Q   Detective Thoms, you indicated you interviewed the defendant, Mr. Steele, what was the reason for that interview?

A   On May 24th I interviewed a girl named, who identified as E.M.C.  She disclosed that she was sexually assaulted by Mr. Steele.

Q   Do you recall, is E.M.C.'s date of birth ███-10?

A   That sounds accurate.

Q   Therefore, she would be, on May 24, 2022, under the age of 13?

A   Yes.

Q   And what, if anything, did E.M.C. state to you?

A   I conducted a forensic interview of E.M.C.

During the forensic interview, she disclosed that her teacher, Mr. Steele, did engage in multiple counts of sexual contact with her.

She disclosed, on one incident in particular, that while two other kids were in the class, Mr. Steele was dancing and then turned

Case 2:25-cv-00570-JPS     Filed 03/24/25     Page 68 of 103     Document 31

on some music to dance and then eventually turned
off the lights.  He then approached E.M.C.

Said something like:  Can I touch it?
Then put his hands down her pants and inserted his
finger into her vagina, took it out and inserted it
back in.

DEFENDANT:  (Shakes head left to right.)

THE WITNESS:  Moments later, he then had
her walk towards his desk after she buttoned up her
pants.  Then they sat next to each other.

She then noticed his penis because he is
holding it, and it was going up up up is what she
kind of described.

While then at the desk, he then took her
hand, placed it on his penis over his clothes
and then pressed it down, told her to go.

She then felt --

DEFENDANT:  (Shakes head left to right.)

THE WITNESS:  She felt uncomfortable and
stopped, and that particular incident is something
--

BY MS O'BYRNE:

Q    Was she able to set a time frame for when that
incident occurred?

A    It was a couple weeks, or a couple weeks before

Case 2225cv-00570-JPS     Filed 08-22-25     Page 69 of 103     Document 31

I interviewed her.

Q    You interviewed her when, May 24th?

A    Yes.

Q    So would that incident have occurred between March 1st of 2022 and May 27th of 2022?

A    Yes.

Q    Did that --

     Did she tell you where that incident occurred?

A    At her school Andrew Douglas Middle school on 18th Street, about 3200 block.

Q    Is that located at 3620 North 18th Street, No. 238?

A    Yes.  No. 238 is Mr. Smith's social study class.

Q    Is that in the City and County of Milwaukee, State of Wisconsin?

A    It is.

Q    You indicated that you eventually spoke with Mr. Steele as well, correct?

A    Yes.  I conducted a Mirandized interview of Mr. Steele.

Q    Did he acknowledge doing what E.M.C. stated he did?

A    Mr. Steele admitted that he put his hands down her pants and put there for less than a minute, is what he said.  But he -- his story is slightly different in that he -- he said that she took his hand and put

it down her pants.

MS O'BYRNE:  I have nothing further for this witness.

THE COURT:  Defense.

CROSS EXAMINATION

BY MS KUEHN:

Q    Thank you.

Detective, you indicated that you gave him Miranda Warnings before taking a statement, is that correct?

A    Yes.

Q    And where did that Miranda Warnings take place?

Was it at the Police Administration building or somewhere else?

A    The Police Administration building.

Q    And after he was read his Constitutional Rights, that is when he made an admission of touching her vagina less than a minute?

A    Yes.

Q    And that interview was recorded?

A    Yes.

Q    There was an allegation by E.M.C. that this sexual assault occurred in front of two other students or two other students were in fact in the room. Was her allegation corroborated by two other

Case 2225cv-005700JPS     Filed 08022425     Page 711 of 1033     Document 2331

students?

MS O'BYRNE:  Objection, outside the scope of this hearing, discovery.

THE COURT:  Sustained.

MS O'BYRNE:  Irrelevant.

THE COURT:  Sustained.

BY MS KUEHN:

Q    You indicated that you personally conducted a forensic interview of E.M.C., is that correct?

A    Yes.

Q    Are you trained in conducting forensic interviews?

A    Yes.

Q    And E.M.C. said this allegation occurred approximately a few weeks before in that her interview took place on May 24th, why did you pick March 1st, as a start date upon the alleged sexual contact?

MS O'BYRNE:  Objection, irrelevant.

THE COURT:  Overruled.

DEFENDANT:  (Shakes head left to right.)

THE WITNESS:  She disclosed multiple contacts in which she never record it as well.

THE COURT:  Hold up, Detective.

He grabbed -- where she grabbed his penis as well?

Case 2:25-cv-00570-JPS    Filed 08-02-25    Page 72 of 103    Document 23-1

Detective, as best as you can, if you can repeat that answer, please.

THE WITNESS: During her disclosure, she described several incidents in which she grabbed his penis over his clothes beginning around that time.

BY MS O'BYRNE:

Q    Beginning around March 1st?

A    Yes.

Q    Is this a case where E.M.C. submitted to a rape shield examination -- I mean a rape examination and DNA was taken?

MS O'BYRNE: Objection relevance, beyond the scope and discovery.

THE COURT: Sustained.

MS KUEHN: I have no further questions. Thank you.

MS O'BYRNE: Commissioner, the State has no further questions for this witness and no further witnesses.

THE COURT: Evidence or testimony from the defense?

MS KUEHN: No.

MS O'BYRNE: State moves for bind over.

MS KUEHN: Defense would move for

Case 2:25-cv-00570-JPS     Filed 08-22-25     Page 73 of 103     Document 231

dismissal.

THE COURT:  Based on the testimony in this record, I do find cause to believe that a felony was committed in Milwaukee County, probably committed by this defendant, therefore he is bound over for trial.

MS O'BYRNE:  Commissioner, I have filed with your clerk via CCAP an information, signed and dated and I am in the process of Emailing a copy of that document to Defense Counsel.

CLERK:  For scheduling, looking at the week of July 11th.

MS KUEHN:  I am in receipt of the information, I waive its formal reading, enter a plea of not guilty on behalf of Mr. Lonnie Steele

CLERK:  The next court date is July 12th, 8:30, scheduling, Branch 12, Judge Borowski.

(9:50 a.m.)

Case 2:25-cv-00570-JPS     Filed 08-22-25     Page 74 of 103     Document 23-1

STATE OF WISCONSIN)

) SS.

MILWAUKEE COUNTY  )

            I, KATHERINE M. NELSON, an Official Court Reporter in and for the Circuit Court of Milwaukee County, do hereby certify that the foregoing is a true and correct transcript of all the proceedings had and testimony taken in the above-entitled matter as the same are contained in my original machine shorthand notes on the said trial or proceeding.

            Dated at Milwaukee, Wisconsin, this 28th day of May, 2024.

ELECTRONICALLY SIGNED
/s/Katherine M. Nelson
_____
Katherine M. Nelson
Official Court Reporter

FILED
05-23-2024
Anna Maria Hodges
Clerk of Circuit Court
2022CF002129

STATE OF WISCONSIN   CIRCUIT COURT   MILWAUKEE COUNTY
BRANCH 11

-------------------------------------------------------

STATE OF WISCONSIN,

      Plaintiff,       CASE NO. 22-CF-2129

        vs.

LONNIE STEELE,

      Defendant.

-----------------------------------------------------------

SENTENCING HEARING

-----------------------------------------------------------

BEFORE THE HONORABLE DAVID SWANSON,
CIRCUIT COURT JUDGE PRESIDING
SEPTEMBER 14, 2023

A P P E A R A N C E S:

MS. ERIN KARSHEN, Attorney at Law, appeared on behalf of
the State.

MR. PATRICK FLANAGAN, Attorney at Law, appeared on
behalf of the Defendant.

MR. LONNIE STEELE, Defendant, appeared in person

DANIELLE N. HOLCOMB
Official Court Reporter

TRANSCRIPT OF THE PROCEEDINGS

THE CLERK:  *State of Wisconsin versus Lonnie Steele*, 22-CF-2129.  Appearances, please?

MS. KARSHEN:  The State appears by Erin Karshen.  Good morning.

MR. FLANAGAN:  Lonnie Steele appears in person with Attorney Patrick Flanagan.

THE COURT:  All right.  Good morning, everyone.  We're scheduled today for a sentencing hearing.  I understand the parties are ready to proceed; is that correct, Ms. Karshen?

MS. KARSHEN:  Yes, your Honor.

THE COURT:  And the State's complied with victim notification requirements?

MS. KARSHEN:  Yes, your Honor.  We notified the victim and her parents.  Her father and the victim are both present in court.

THE COURT:  Thank you.  Is defense ready to proceed?

MR. FLANAGAN:  Yes.

THE COURT:  With any sentencing hearing, we start with the State.  We'll start with Ms. Karshen.

MS. KARSHEN:  Thank you, your Honor.  In this case, the defendant pled to child enticement.  Both sides are free to argue whatever sentence they feel

appropriate. I did notify counsel I was going to be asking for an amount of restitution to cover future therapy costs. I did talk with the father. The victim is currently in therapy. There's -- she's going to continue to be in therapy. There's not really an end date that we know of right now, and I was going to ask for restitution in the about of $75 hundred for future therapy costs.

Obviously, for the family to receive any of that money if the Court were to order that, they would have to provide documentation. I'm just looking for the statute. It might take me a minute to find for future therapy bills. I'll provide that to the Court. That's the only housekeeping matter before the sentencing starts.

THE COURT: Okay. Thank you. Mr. Flanagan?

MR. FLANAGAN: Well, I guess in terms of that, I'd like to at least look at the statutes because it's prospective damages for restitution, but the request for therapy-type services is reasonable. So I guess I just -- I can see that it's a reasonable request for that item.

MS. KARSHEN: I did find the statute, and I guess if we want to address this at the end after people have a had a chance to look at it, 973.20(4m). It says

if the defendant violated this multitude of statutes and if the Court finds the crime was sexually motivated, the restitution order may require the defendant to pay the amount not to exceed $10,000, equal to the cost of necessary professional services related to psychiatric and psychological care and treatment. The ten thousand limit under this subsection does not apply to restitution under (3) or (5). So that is the statute the State is relying on.

THE COURT: Okay. All right. Thank you. Well, let's --

MS. KARSHEN: I'm sorry, Judge. One of the listed statutes is 948.07, which is child enticement so it does apply.

THE COURT: Okay. That's the only restitution being requested?

MS. KARSHEN: That's correct.

THE COURT: All right. Thank you. All right. I'll address that when we get to the close of the sentencing hearing in terms of what the Court's ruling will be. All right. Any other issues, Ms. Karshen?

MS. KARSHEN: Not from the State.

THE COURT: Mr. Flanagan?

MR. FLANAGAN: No.

THE COURT: Okay. All right. Let's get

started with the State's argument.

MS. KARSHEN:  Thank you, your Honor.  It's my understanding the victim, E████, would like to make a statement.  I'd ask the Court hear from her and her father, and then I'll have some additional comments.  And E████'s first name is E-████████.

THE COURT:  All right.  E████, do you want to come on in?

MS. KARSHEN:  Your Honor, I apologize.  I mixed up the victim and her mom.  The victim's name is E██████.  She would like to have her father make a statement first, and then she'll decide if she's going to make a statement.

THE COURT:  Sir, can you spell your daughter's name for us?

MR. C████████:  E-████████████.

THE COURT:  Thank you.

MR. C████████:  My little twin.

THE COURT:  All right.  Sir, then, thank you for coming to court.

MR. C████████:  No problem.

THE COURT:  If you could please, then, start your statement just by stating and spelling your name for the record.

MR. C████████:  M██████, M-████████████.

C▇▇▇▇, C-▇▇▇▇▇▇.

THE COURT: Thank you, sir. You can say whatever you want to say today.

MR. C▇▇▇▇: Okay. I was taking her back and forth to school every day. I really seen a little change in her. I didn't know what exactly was going on until the end of the year. It kind of hurt me to know that a guy was taking advantage of her. You send your kids to school to learn and be protected, and I feel like my baby wasn't protected when I was sending her to school. That's pretty much it.

And I know how it is. I don't want call you sick or anything like that, bro, because I know how things -- it's all about things you act on.

THE COURT: Sir, please just address your comments to the Court.

MR. C▇▇▇▇: Oh, yeah. I don't want to call him sick or anything because sometimes you have a thought in your head about how you act on the thought. You know, you can have something in the back of your head, but you don't have to act on it. He didn't have to act on that. It could of just maybe, you know, stayed in his head. But I forgive you. I forgive him but, you know, I'll leave it in your hands.

THE COURT: All right. Thank you, sir.

Thanks again for coming and bringing E██████.

MS. KARSHEN: Judge, if it's okay can E██████ sit on this side of my desk and I'll make sure the microphone is close to her?

THE COURT: That's fine. Good morning, E██████, if you want to talk, please go ahead and tell us whatever you want to tell me.

MISS C██████: Um, I changed a lot since like that. I mean, like, I'm not -- I gained more confidence. I'm not, like, quiet like I used to be. I'm in eighth grade now so I'm not into that stuff anymore, and like I got a lot of friends that's loyal. I'm not talking to any kind of teachers like that, and I'm not doing any of that stuff. Oh. It made me feel, when he did, I mean, it made me feel wanted, but now I know that it's sickening and I didn't like -- I don't need that.

THE COURT: Okay. Well, thank you for coming to Court, E██████. I know it's hard. It's hard especially for a young person to come and talk to the Court. I appreciate you coming and telling the Court how this affected you. Thanks.

MISS C██████: Mm hmm.

THE COURT: Okay. Back to Ms. Karshen.

MS. KARSHEN: The State's recommendation in

this case is both sides were free to argue. It's going to be for a term in the Wisconsin State Prison System. The State's recommendation is for a term of 13 years in the Wisconsin State Prison System, broken down into eight years of initial confinement and five years of extended supervision. I base that on the facts of this case.

E█████ was 11 years old at the time. She was, as her father stated, going to MPS because we tell kids every day, day in and day out, they have to go to school, listen to their teachers, and school is their job when they're that age. She was 11 years old, and the defendant was 53 years old. I believe he was her social studies teacher.

Just for a little bit of background, the defendant has no criminal record. He has one referral that's quite dated for maintaining a drug trafficking place. He has one OWI but no substantial record. The police did interview the principal or the assistant principal in this case, and it is concerning that before these allegations came to light, the defendant did have a misconduct investigation earlier in the year for other inappropriate things such as students -- allowing students to drink out of his water bottle in what they describe as a waterfall fashion, and regarding students

paying for things and then not providing them with the change.

She never heard of him hugging anyone, but he had been told numerous times to uncover the window to his classroom door, which he finally did.  That's concerning that he had to be told multiple times to uncover that window because that window to his door obviously would allow people to monitor what was going on in his classroom.

In this case the victim, as I stated, was 11 years old.  She had expressed to the police that she thought that she was in love with her teacher, and as she told the Court today, it made her feel wanted.  I think there were definitely some boundary issues.  I do believe at that time that E█████ did believe she had feelings for the defendant, which caused her to act and cross some boundaries.  But she's 11 and the defendant had all of these resources and all of these options to put things into place to not put himself in that situation.  He could have had additional teachers in the room.  He could have not been her teacher.  He could have filed reports with the school.  He could have done all kinds of things except put himself in this situation to be in that room with E█████.

She did give a very detailed, very long --

Case 2:25-cv-00570-JPS    Filed 08-22-25    Page 84 of 103    Document 23-1

it's just under two hours -- forensic interview about multiple different types of touching that this defendant did and that she did.  In candor to the Court, she did talk about touching the defendant, hugging him, and then he very clearly crossed the line.  She also discussed this with other students so while we focussed on E██████, appropriately so, there were multiple students in the classroom interviewed by the police and then provided handwritten statements as MPS, their standard procedure when there's an allegation of either criminal or some type of misconduct, they have all the students write statements.

So a lot of students did write statements about this.  Some of them said that E██████ said that Mr. Steele was putting his hands on her, telling her to pull her pants down when they were alone in the classroom.  Some of the students saw some hugging and other disclosures from E██████.  The defendant was talked to on scene.  He was released on scene to allow the investigation to further unfold, and when E██████ did her forensic interview, she did disclose multiple different types of sexual contact with the defendant.

She indicated that she had kissed Mr. Steele's neck, that he put his arm around her, that there was hand to penis touching, and that it started in different

classrooms. He was at one point looking at her with one hand in his hair and then rubbing his penis on the other hand, instructing her to come closer to him. She indicated that in another incident, he looked at her, grabbed her hand, and put it on his private parts, which was clarified to be penis. She started touching him, grabbing, and what she described as squishing his penis. She touched his penis over clothing. She indicated that the first time this happened she was in sixth grade in the third hour social studies class. They -- when this ended, they didn't really say anything to each other, just stood up and gave each other a hug and then he grabbed her buttocks while he was hugging her.

She indicated there was a time she touched his penis in the hallway. There was another time he touched her vagina. She indicated that she saw the defendant moving his penis over his pants and saw his penis moving up and up and up, and that he said to her, let me see how it feels, and he put -- ended up putting his hand in her pants, inside her underwear, and started playing with her. He took his hand out, put his hand back in, did it a little faster, and then she asked him, can I touch yours now.

She also indicated the defendant called her bae or baby. Bey would be an acronym that usually

stands for before all others or before anyone else, meaning that she is a special person to him. She indicated that they had kissed on the lips five or six times. There was times when she was 11 years old and gave him a kiss on the cheek and touched his private part. He made a comment to her about comments about talking about sex and that she would sit on his desk and they would hug. She grabbed his hand and put it towards her buttock, and he grabbed her buttock. And the forensic interview continued with different disclosures of different types of kissing and sexual contact. She knew his birthday.

The defendant, as I said, was released from the scene for the investigation to continue. He was then arrested after the forensic interview. He did admit to police to touching the victim one time on the vagina over the clothing. He also indicated that she had touched his penis three or four times on the outside of her clothing. He told the police he touched her vagina under underwear a few months ago. And that she had pulled his hand towards her vagina. He did touch her vagina for less than a minute. An aggravating factor is he even admitted this was somewhere in the middle of the classroom while there were other students in the classroom, but he believes they just weren't

looking.

He knew that the victim may have a crush on him. He denied kissing her. He said he wrote one behavioral report, describing the incident where she tried to kiss him but didn't take any other further action or put in any type of safety planning or behavioral options with the school. He did say that he hugs his students, both boys and girls, and the supervision has told him not to hug any students.

What he told the police is this was the first and only time he's done anything sexual with a student. He acknowledged it was a poor decision. He made some excuses saying he was dealing with a lot. He had some issues going on with his daughter. To his credit, he did say that was no excuse, but he did want the officers to be aware of some problems he was having in his life. He did express guilt, but he did not want to write an apology letter.

I think there is some good signs in his statement to the police acknowledging it was a poor decision, maybe acknowledging some triggers that brought him to that decision, acknowledging and expressing some guilt; however, he was a 53-year-old man who touched an 11-year-old girl. That in and of itself I believe is worthy of a prison sentence.

The fact that he was a teacher, that he was very aware of her age, he's in a position of power over her, and in his own statement he admitted touching her while other students were in the classroom, it violates so many boundaries, I think it warrants a prison sentence. I think eight years of initial confinement and five years of extended supervision is appropriate.

You can see, I think some of the struggles the victim has in even talking to the Court, even when she said it made her feel wanted, they're such complicated feelings for a girl of her age to process and there's such boundary issues that this defendant is really the cause of, and having those boundary issues and having this happen at such a young and vulnerable age is really going to affect her for the rest of her life.

This defendant was supposed to teach her social studies, guide her, and honestly be an example for all youth in his classroom, and I think it's fair to say we expect teachers to be an example outside of the classroom. I understand he may have had some issues going on with his daughter and in his personal life, but there were so many boundaries crossed that I think a term in the Wisconsin State Prison System is appropriate. I'm asking for eight years of initial confinement and five years extended supervision. That's

the State's recommendation and the basis for it.

THE COURT:  Thank you.  Mr. Flanagan?

MR. FLANAGAN:  As the State said, the defendant at the time of this was 53.  He's 54 now, and in talking to him about his sort of career and education up to this point, the résumé that he has is really incredible.  I'm not used to having a defendant in criminal court with the level of education and service to the country that this man has so it's impressive.

He went to college at UW Whitewater, got his Bachelor's degree in 1995.  He got his Master's degree in teaching from Cardinal Stritch in 2002.  He was in the Reserve National Guard for 12 years, army, stationed at bases here in the city of Milwaukee and then Madison and then had this job at school.  So he had a career. He had this impressive education background.  He had service to the country in the national armed forces and had a respectable good career job, and he's thrown all of that away.

It's very sad because this résumé isn't going to get him much now.  As impressive as it is and all the experience he has, obviously, legally can't get him a job and career of teaching anymore.  But he's been looking for work while this case has been open. Obviously, they take one look at that and see what's

charged and what's going on, and they don't want to go anywhere near him as far as being an employer. So he has this, like I say, impressive résumé, and it's all gone.

He's still going to work and try and get employment and recognize that he's still got a lot of life left and try to do some good. As it stands, he's lost his license to teach. Now he has this burden of having a conviction, having a felony conviction, having to register as a sex offender. So this whole thing has brought him down to a very low level and it's been crushing. So there has been consequences for him, major ones, outside of what the State's even recommending.

Having to go to court, having to sit here and acknowledge what he did and having the details repeated out loud, having the young lady come in here and make a statement, I can tell just sitting next to him, he's emotional inside. It's the way he's listening to this and dealing with it. I bring all this up to emphasize to the Court there has been consequences already, major ones.

I don't see him ever being in this kind of situation again. He recognizes now that when things were happening in the classroom with this young lady, different decisions should have been made, going to

Case 2:25-cv-00570-JPS    Filed 08/24/25    Page 91 of 103    Document 31

somebody, reporting what was happening, what was being said, getting a different assignment, doing something other than what he did do, which was cross boundaries and put him in this kind of situation where he's facing prison today.

He did go to jail.  This is the longest time he's ever had to do that, 20 days.  He was able to bail out 20 days after he was arrested for this so there has been some incarceration already.  He's asking the Court to consider probation, given that he's not been, other than the OWI, in the criminal court for his whole life.  He's 54 years of age, and this is his first brush with felony court.  It's a reasonable request to give the Court to give him a chance to demonstrate that he can comply with rules.

In terms of following the rules while this case has been pending, there's been court dates made, Justice Point reports to comply with, Justice Point regulations to comply with.  He's kept in contact with me.  So he can follow the rules, and if he was given rules, would follow all the rules I'm sure.

Then there's programs that he's going to have to deal with.  He's going to have the -- I'm sure the restrictions that the Department of Corrections puts on a person for this type of offense when on supervision is

incredible. There's restrictions on where you can go, who you can be around, it's not a cake walk for a sex offense. The restrictions are pages and pages of restrictions on things you can't do, things you can't be around. So it's a total change of lifestyle even from being on bail in a criminal court case.

If the Court feels that that's not sufficiently -- doesn't sufficiently address the offense, let's put it that way, I would ask the Court to consider an amount less than what the State is recommending. I think because of the lack of, really, any serious criminal record for this man and the years of compliance he's done with really outstanding things that we would hope for ourselves or anybody else to go to college, get a Master's degree, to serve the country in the armed forces, and have a career, I think that speaks to something about his character. Yeah, these were poor decisions and there ought to be the consequences for it, but I think his character ought to be taken into account for the rest of his life and what he's done.

So if it's got to be a sentence that is of prison and in that nature, I would ask for no more than three years of initial confinement, but I would ask the Court to strongly consider probation for this man, and

if there's condition time that's warranted, I would respect that.

As far as the restitution issue, the statute does seem to indicate what the State says so I would say that as long as the statute is complied with, the defense would not be in a position to object to the restitution for the reason that's stated as to why it's being requested.

THE COURT: Okay. Thank you, Mr. Flanagan. So I've heard from the attorneys. Now, Mr. Steele, I'd like to hear from you too, whatever you want to say. Go ahead.

THE DEFENDANT: Your Honor, I would like to say I'm not a criminal. I'm not a child molester. I've always had -- wanted to teach and work with kids since I was 18 years old. Doing my job last year as was stated, I should have used resources available to report things that was going on in this classroom. I'm not -- although with this charge I will be labeled a sex offender, I'm not a child molester. I've never in all the years I was teaching I never had a parent complaint.

And saying hugging children, I understand the way the world is. The hugs I was giving the kids were the kids who weren't receiving them at home. It was more nurturing and saying it's okay, everything is going

to be all right, not no sexual hug.  But, again, rules, you know, no touching a kid period.

So I just want to let you know, your Honor, and I understand, yes, I have suffered a whole career gone, reputation.  The world, I mean, they look at you totally different.  And so, again, I'm not a child molester, your Honor.  Thank you for your time.

THE COURT:  Yes, sir.  Thank you.  Thanks for your comments.  All right.  At this time I've heard from everyone, and I'm going to be explaining the sentence in just a couple of minutes.  Let's go off the record for a moment.

* * *

THE COURT:  Okay.  Let's get back on the record.  Thank you, everyone, for your comments.  I appreciate everyone coming to court and explaining kind of what happened here and what your relative positions are.  I'm going to start with what we call admonitions.  Mr. Steele, this is the part of the sentence the Court must order.

First under State law with a felony conviction, you may not possess a firearm at any time in the future.  Section 941.29 of the statutes makes it another felony for anyone who has been convicted of a felony to ever possess a firearm, carrying with it it's

own ten-year period of imprisonment, $25,000 fine, or both.

Also, you cannot vote in any election until your civil rights are restored and you are required to provide a DNA sample to the State crime lab and pay a DNA surcharge for this one count. You are advised that if this conviction is reversed, set aside, or vacated, you may qualify to have that DNA sample data expunged if you meet other conditions under statute.

Also, as a sex-related offense, there are certain additional orders the Court must make. First, you must comply with sex offender reporting requirements under Section 301.45 of the statutes.

Also, you cannot engage in any occupation or participate in any volunteer position that requires working and/or interacting primarily and directly with children under 16 years of age. The penalty for such an offense is a maximum sentence of ten years of prison, $25,000 fine, or both. The following would be prima facie evidence that would prove that the occupation or volunteer position requires work or interaction primarily and directly with children under 16 years of age: Teaching children, child care, youth counseling, youth organization, coaching children, parks or playground recreation, or school bus driving.

So when considering a sentence, the Court looks at certain factors, and we start with the gravity of the offense. Here, this is a very significant felony offense. We're at the Class D level. That's a potential sentence of 25 years, 15 years of confinement and 10 years of extended supervision. That's not the direction the Court is going, but it's important to remember that's how seriously the State legislature and our statutes view this type of offense. It is kind of in the middle of the felony range, which makes it a very significant offense.

It's a case involving the victimization of a child, which is also kind of an aggravating factor, a child who was only 11 at the time. That is a significant factor in the Court's minds that this child was so young and was entrusted to your care. That's kind of our second set of factors, which is the character of the defendant and his rehabilitative needs.

Here, this is a pretty extraordinary violation of trust. I know, Mr. Steele, that you had a long career as an educator, and so it's extremely concerning to the Court that, you know, at your age after all these years of experience, you would have made this enormous mistake, knowing what you know, knowing how this would affect this child, knowing how it would affect the other

Case 2:25-cv-00570-JPS     Filed 08/22/25     Page 97 of 103     Document 31

children in this class and other children in the school, knowing how it would affect the other teachers and staff members, the trust they would lose from the parents who send their children to that school, the administrators both at this school and in the district as a whole. So while I understand you've done a lot right in your life, you have a solid educational background, you worked in a position of trust for many years, you did make an enormous mistake here that harmed many people.

Now, in terms of your rehabilitative needs, I'm not entirely clear on what those are, but this will be a Department of Corrections sentence so you're going to have to work on those needs with the Department of Corrections. Something got you way off track here in a way that injured many people, but particularly the victim in this case, and you need some time and the community needs for you to take that time to think about what those needs are and have them addressed. The need to protect the public is an issue here, again, because you victimized a child in a way that was very damaging to her and very damaging to the entire educational establishment in our city.

Now, this is not a probation case. I understand that based on the lack of prior offenses and, Mr. Steele, what otherwise appears to have been a very,

almost, exemplary life, you did violate the law in such a way that it would unduly depreciate the seriousness of this crime if probation were granted up front.

Our State sentencing objectives begin with protection of the community.  Second, we look at your rehabilitation and, third, deterrence.  And deterrence means deterring not just you, but other individuals in our community from committing this type of offense.  In your case, deterrence weighs more heavily because in your chosen profession, again, this violation of trust it's extremely serious, not just for you and for the victim in your case, but for every person who's working as a teacher and a teacher's aide, as a staff member, as an administrator in the school system.  They've lost the trust of parents and families who send their children to schools.

And so there has to be a deterrent here. There has to be a way to ensure that the community understands the courts treat this type of offense seriously and that you and other individuals in that position of trust won't make this mistake.  So deterrence is a significant factor in the Court's weighing of a decision here.

Now, this case, in terms of early release programming, Mr. Steele, you're not eligible for that

programming.  First, you're not eligible for the Challenge Incarceration Program based on your age, and you're not eligible for the Substance Abuse Program based on the definition provided under the statute for eligibility.  So the Court does not make you eligible for those programs.

The Court is ordering you to pay all court costs, mandatory surcharges, and assessments.  These are the amounts required by State law.  The Court is not imposing any fines here.  At some point you will be working again.  The Court, though, is ordering the restitution requested by the State here.  I do find that based on Statute 973.20(4m) that restitution is appropriate here.  The Court finds this crime was sexually motivate, and on that basis, the Court grants the restitution request of a maximum of $7,500.  That would be paid out based on the victim's need and receipt of therapy services going forward for therapy connected with this offense and her needs in that regard.

The Court directs the DOC to collect any monetary amounts today that are ordered today at a rate to be determined by the DOC -- at a rate to be determined by the DOC from the defendant's prison funds.  Any monetary amounts that remain unpaid when the defendant is released from confinement are to be paid as

a condition of extended supervision.  And any monetary amounts that remain unpaid when the sentence is completed are ordered reduced to a judgment against Mr. Steele for any unpaid balance, and collection can then proceed as provided by statute.

Mr. Flanagan, is there any credit for time served here?

MR. FLANAGAN:  Yes.  20 days.

THE COURT:  The Court grants credit for 20 days time served as against the sentence the Court will be imposing here.  The Court is leaving all conditions of extended supervision to the discretion of the Department of Corrections with the exception of the no contact order.  So, Mr. Steele, you are ordered to have no contact with the victim other than I am going to order you to write a letter of apology but deliver that, then, to your agent who will be supervising you.  That agent can determine when and whether to deliver that letter to the victim.

Now, regarding the sentence, the Court is coming down kind of in between where the parties recommended.  In terms of the sentence, the Court is ordering a total of 12 years, six years of initial confinement and six years of extended supervision.  That would be concurrent with any other sentence.  I

understand there is no other sentence that applies here, but this would be concurrent if applicable.

So that is the Court's determination. Mr. Steele, you'll receive a copy of this written explanation of determinate sentence today. That explains the sentence the Court imposed. You do have the right to appeal, and any notice of intent to pursue postconviction relief must be filed with the Clerk of Circuit Court within 20 days of sentencing. Your lawyer must continue to represent you until your decision to seek postconviction relief or not is made. If you wish to seek that relief, your lawyer must file the necessary notice within this 20-day time period. Parties, have I left anything out? Ms. Karshen?

MS. KARSHEN: No, your Honor. Thank you.

THE COURT: Mr. Flanagan?

MR. FLANAGAN: No.

THE COURT: Thank you, everyone. Good luck, sir, and good luck, E█████. Court is adjourned.

(Whereupon, the proceedings concluded.)

STATE OF WISCONSIN )

                    ) S.S.

MILWAUKEE COUNTY    )


     I, DANIELLE N. HOLCOMB, Official Court Reporter, do hereby certify that I have reported the foregoing proceedings; that the same is true and correct as reflected by my original machine shorthand notes taken at said time and place.


                        Dated May 23, 2024


                        Danielle N. Holcomb